MICHIGAN MILLERS MUTUAL INSURANCE COMPANY, Appellant-Respondent, v E. JOHN CHRISTOPHER et al., Respondents; NANCY D. DRAKE, as Limited Administratrix of the Estate of LEO A. DRAKE, JR., Deceased, Respondent-Appellant.

Fourth Department, January 25, 1979

## APPEARANCES OF COUNSEL

*Brennan, Tesseyman, Zelman, Runfola, Brownstein & Loonsk (F. William Tesseyman* of counsel), for appellant-respondent.

*Cucci, Welch, Colicchio & Weinstein* for E. John Christopher, respondent. (No brief or argument.)

*Faraci, Guadagnino, Lange & Jons (Paul Lange* of counsel), for Nancy D. Drake, respondent-appellant.

*Quinn & McGary (David Quinn* of counsel), for Village of Warsaw, respondent.

*James W. Greene* for County of Wyoming, respondent. (No brief or argument.)

### OPINION OF THE COURT

CARDAMONE, J. P.

E. John Christopher, insured under a homeowner's policy issued by Michigan Millers Mutual Insurance Co., was involved in an incident in his home on June 5, 1976 during which one Leo Alvin Drake, Jr., was fatally shot. As a result an action was commenced against him by Nancy D. Drake, as administratrix of her husband's estate, which alleged that Christopher's "negligence or culpable conduct" was a substantial factor in causing the death of the intestate.

Mr. Christopher was served in the Drake action in July, 1977, and forwarded the summons and complaint to an agent of Michigan. He executed a "Non-waiver Agreement" with Michigan and provided it with a written account of the shooting incident. In this signed statement the following description of the incident is given: On June 5, 1976 Christopher was living at the insured premises, 97 South Main Street, Warsaw, N. Y. At about 1:15 A.M. he was awakened by his wife who told him that there was an intruder in their bedroom. Upon being challenged the intruder turned and fled. Christopher climbed over his wife to reach the top dresser drawer, pulled out holstered .22 caliber automatic pistol and gave chase. After first running downstairs, he was attracted by the screams of his wife to the stairway where he confronted the intruder at the first floor at the top of the stairway. He cocked his gun and said, "Hold it, hit the floor." The intruder at first complied, but after hearing Mrs. Christopher tell her husband that the police were on the way, the intruder jumped on Christopher, who had previously fired a shot into the ceiling to prove that the gun was loaded. In the course of the struggle Christopher fired a number of shots into the intruder's body fatally wounding him.

Thereafter, Michigan commenced this declaratory judgment action to be judicially absolved of any liability under its homeowner's policy with Christopher for the shooting incident. In response to subsequently served notices to admit, Christopher refused to characterize the shooting as deliberate saying that the determination of whether the shooting was accidental or not was at "the very crux of the law suit commenced by" Michigan Millers.

Plaintiff Michigan moved for summary judgment in the declaratory judgment action on the ground that by his written statement defendant had conceded he intended to injure decedent Drake. Special Term denied this motion and the cross motion for summary judgment made by the Drake estate to compel Michigan to defend against its action. Michigan and Drake's estate both appeal.

The insurance agreement between the parties governs the rights of all those seeking to claim under the agreement according to the rules of the law of contracts *(Mackowiak v Polish Union of Amer.,* 236 App Div 44, 46; see, e.g., 44 Am Jur 2d, Insurance, § 1736). Where it is unambiguous, an insurance contract should be read and enforced according to the plain meaning of its words *(Austrian v Equitable Life Assur. Soc. of U. S.,* 48 AD2d 144, 146, affd 39 NY2d 477) and its provisions should be liberally construed to uphold the policy whenever possible *(Kramnicz v First Nat. Bank of Greene,* 32 AD2d 1009, 1010) with the caveat that any ambiguity in the policy provisions is to be resolved against the insurer *(Miller v Continental Ins. Co.,* 40 NY2d 675, 678).

In this case Michigan contends that any bodily injury suffered by defendant Drake's intestate as a result of the gunshots fired by Christopher was "bodily injury * * * expected and/or intended from the standpoint of the insured". It argues, therefore, that the incident which caused Drake's death comes within an express exclusion contained in Christopher's homeowner's policy. It claims that the injury cannot be construed as an unintentional or unexpected result of the act of knowingly firing the gun into decedent's chest or stomach (cf. *Miller v Continental Ins. Co.,* 40 NY2d 675, 677-678, *supra).* We cannot agree with this argument.

Michigan's duty to defend is separate from and broader than its duty to pay *(McGroaty v Great Amer. Ins. Co.,* 36 NY2d 358, 365; *Utica Mut. Ins. Co. v Cherry,* 38 NY2d 735, 737; *Marine Midland Servs. Corp. v Kosoff & Sons,* 60 AD2d 767, 768). Christopher's homeowner's policy states that Michigan "shall have the right and duty, at its own expense, to defend any suit against the Insured seeking damages on account of such bodily injury * * * *even if any of the allegations of the suit are groundless, false or fraudulent".* (Emphasis added.) This language merely restates the public policy of New York which requires that when an insurer undertakes an obligation to defend, that obligation "extends to any action,

however groundless, false or fraudulent, in which facts are alleged within the coverage afforded by the policy" *(Utica Mut. Ins. Co. v Cherry,* 38 NY2d 735, 737, *supra;* see, also, *Sturges Mfg. Co. v Utica Mut. Ins. Co.,* 37 NY2d 69, 72-74; *International Paper Co. v Continental Cas. Co.,* 35 NY2d 322, 326-327; *United States Fid. & Guar. Co. v Copfer,* 63 AD2d 847).

■ Despite Christopher's admissions to his insurance company, Drake's estate sued him for the unintentional tort of negligence rather than the intentional tort of battery. To be relieved from its duty to defend, plaintiff insurer "is obligated to demonstrate that the allegations of the complaint cast that pleading solely and entirely within the policy exclusions, and, further, that the allegations, *in toto,* are subject to no other interpretation" *(International Paper Co. v Continental Cas. Co.,* 35 NY2d 322, 325, *supra).* Where, as here, the allegations made by the administratrix of the Drake estate in her complaint are equally susceptible to either of two interpretations, i.e., that Christopher intended to shoot her intestate or that he accidentally did so, plaintiff insurance company owes Christopher a duty to defend regardless of his admissions to the company.

Special Term, therefore, erred in denying the cross motion for summary judgment made by Drake's estate (see, especially, *Utica Mut. Ins. Co. v Cherry,* 38 NY2d 735, 737, *supra).* Further, although Christopher failed to make such a cross motion upon Michigan's motion for summary judgment, Special Term was empowered to and should have granted him summary judgment (CPLR 3212, subd [b]).

Accordingly, the order appealed from should be modified in accordance with this opinion and, as modified, affirmed.

SIMONS, HANCOCK, JR., SCHNEPP and WITMER, JJ., concur.

Order unanimously modified, on the law, and, as modified, affirmed, with costs, to defendants Christopher and Drake, in accordance with opinion by CARDAMONE, J. P.