# Niagara County, Respondent-Appellant, v Utica Mutual Insurance Company, Appellant-Respondent.

Fourth Department, May 15, 1981

APPEARANCES OF COUNSEL

*Palmer, Heffernan, Wickser & Beyer (John J. Heffernan* of counsel), for appellant-respondent.

*John V. Simon (Sheldon Hurwitz* of counsel), for respondent-appellant.

### OPINION OF THE COURT

DOERR, J.

Plaintiff Niagara County is one of several defendants in a series of lawsuits commenced by some 65 claimants in what has come to be known as the "Love Canal" litigation. The allegations contained in the several complaints are not substantially dissimilar. The defendants, collectively, are charged with recklessly dumping and abandoning chemicals, waste products and debris which were, or subsequently became, noxious, poisonous and inherently dangerous. The complaints also allege other theories of liability, including nuisance, violation of statutes and ordinances, wrongful conveyance of the allegedly contaminated properties to plaintiffs or their predecessors in title without notice of the complained-of infirmities, strict liability and common-law landowner's liability. The plaintiffs all claim damages and injuries caused by toxic wastes and chemicals which were dumped or abandoned at the Love Canal site where they resided.

At the time when the "Love Canal" litigation was commenced, and since January 1, 1975, there was in existence a special multiperil liability policy issued by Utica Mutual Insurance Company, the defendant herein, to plaintiff Niagara County. As plaintiff received the various notices of claim and summonses and complaints in the underlying actions, it forwarded them to Utica Mutual pursuant to the multiperil policy conditions. Utica Mutual disclaimed liabi-

lity and refused to defend any of the actions. Niagara County thereupon commenced the present action for a declaratory judgment construing the insurance policy issued to it by defendant so as to, *inter alia*, require Utica Mutual to provide a defense to the county in the "Love Canal" litigation and to reimburse the county for expenses incurred to date in defending the said claims.[1]

In its answer Utica Mutual asserted, *inter alia*, that no coverage exists because of a pollution exclusionary clause contained in the policy it had issued.

Special Term granted partial summary judgment in favor of plaintiff declaring that Niagara County is entitled to a defense in the "Love Canal" litigation from Utica Mutual and that Utica Mutual reimburse the county for all reasonable expenses it has expended to date in defending the "Love Canal" claims, except for expenses incurred in bringing the action for declaratory judgment to determine coverage.

The insurance policy in question states that coverage is provided to the insured for all sums, within the policy limits, which the insured shall become legally obligated to pay because of bodily injury or property damage to which the policy applies, caused by an occurrence, and that the insurance company has the right and duty to defend any suit against the insured seeking damages, even if any of the allegations or the suit are groundless, false or fraudulent. (It is not disputed that the underlying complaints allege an "occurrence" as referred to in this coverage provision.) This coverage provision is a basic ingredient of all liability policies. The exclusions contained in the policy which qualify the standard coverage provisions then become critical to the determination of whether coverage is provided.

The exclusionary clause which Special Term properly denominated as the "crux" of the proceedings provides as follows:

"This insurance does not apply * * *

"(f) to bodily injury or property damage arising out of

---

1. The question of indemnification has been severed from the present proceedings by stipulation of the parties.

the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental".

The origin of this exclusion is statutory (Insurance Law, § 46, subds 13, 14) and is required in all policies issued to "commercial or industrial enterprises". Indeed, the pollution exclusion clause contained in the policy tracks the language contained in the statute. Clearly, the addition of subdivisions 13 and 14 to section 46 of the Insurance Law was calculated to buttress New York's strict environmental protection standards. These standards could be undermined if commercial enterprises were able to purchase insurance to protect themselves from liability arising from their pollution of the environment. "For example, a polluting corporation might continue to pollute the environment if it could buy protection from potential liability for only the small cost of an annual insurance premium, whereas, it might stop polluting, if it had to risk bearing itself the full penalty for violating the law." (NY Legis Ann, 1971, pp 353-354.) The conclusion thus becomes compelling that the pollution exclusion clause, mandated by statute, was intended to apply only to actual polluters.[2] In further support of this conclusion Rowland H. Long has stated: *"Pollution:* Exclusion (f) is new. It eliminates coverage for damages arising out of pollution or contamination, where such damages appear to be *expected or intended on the part of the insured* and hence are excluded by definition of 'occurrence.' Coverage is afforded for damages caused by pollution or contamination if the discharge, dispersal, release, or escape is sudden and accidental. (See N.Y. Ins. Law, Sec. 46 Subdiv. 13 and 14 as amended 1971)" (3 Long, Law of Liability Insurance, App-58; emphasis added).

---

2. While all defendants in the underlying actions are collectively charged with recklessly dumping and abandoning chemicals, waste products, etc., it is not seriously contended that Niagara County actually dumped any contaminants.

Utica Mutual urges that the statute does not apply since it only requires the exclusion in policies issued to commercial and industrial enterprises, and further that there is no language limiting the exclusion to acts by the insured, here, Niagara County.

For the reasons stated herein, we need not reach the broader question of whether the statute was intended to apply only to commercial or industrial enterprises or could also be applied to municipal corporations under the appropriate circumstances.

The fact that the statute, and in this case the exclusionary clause itself, fails to contain language which limits the exclusion to acts by the insured is of no moment, for to hold otherwise would require that we disregard the unqualified public policy intendment of the statute to prohibit pollutors from spreading the risk of loss through the instrument of liability insurance. The construction of an insurance policy ordinarily involves no questions of fact, but is exclusively a question of law *(Hartford Acc. & Ind. Co. v Village of Hempstead,* 48 NY2d 218, 222, n 4). "Where the terms of an insurance policy are ambiguous or are subject to more than one reasonable construction, the policy must be construed most favorably to the insured and strictly against the insurer *(Farm Family Mut. Ins. Co. v Bagley,* 64 AD2d 1014). This is particularly so as to ambiguities found in an exclusionary clause *(Thomas J. Lipton, Inc. v. Liberty Mut. Ins. Co.,* 34 NY2d 356, 361)." *(Allstate Ins. Co. v Klock Oil Co.,* 73 AD2d 486, 488.)

In *Thomas J. Lipton, Inc. v Liberty Mut. Ins. Co.* (34 NY2d 356) an exclusionary clause made the insurance policy inapplicable to damage claims for the withdrawal of the insured's products from the market because of defects and deficiencies. The court held that this referred to withdrawal of the products by the insured, not third parties, despite the fact that the exclusionary clause was silent on the point. The test is whether the ordinary businessman would have thought himself covered by the damage claims asserted by third parties *(Thomas J. Lipton, Inc. v Liberty Mut. Ins. Co., supra,* p 361). There can be little doubt that Niagara County considered itself protected by the multi-

peril policies from liability resulting from pollution and contamination caused by various industries within the county.

"An insurer's obligation to defend is broader than its obligation to pay, and arises whenever the complaint 'alleges facts and circumstances, some of which would, if proved, fall within the risk covered by the policy' (*Great Amer. Ins. Co. v London Records*, 35 AD2d 661, 662; see *International Paper Co. v Continental Cas. Co.*, 35 NY2d 322, 326; *Prashker v United States Guar. Co.*, 1 NY2d 584, 591-592; *Goldberg v Lumber Mut. Cas. Ins. Co.*, 297 NY 148, 153-154)." (*Sturges Mfg. Co. v Utica Mut. Ins. Co.*, 37 NY2d 69, 72.) It follows that the insurer's duty to defend is separate and distinct from its duty to indemnify (*Spoor-Lasher Co. v Aetna Cas. & Sur. Co.*, 39 NY2d 875). In determining the rights of the parties to an insurance agreement, the plain meaning of its words will be given effect, keeping in mind, however, that liberal constructions are preferred and ambiguities will be resolved against the insurer (*Michigan Millers Mut. Ins. Co. v Christopher*, 66 AD2d 148). This rule is particularly applicable when ambiguities are found within an exclusionary clause (*Thomas J. Lipton, Inc. v Liberty Mut. Ins. Co.*, *supra*).

The complaints in the underlying actions, besides charging the various defendants collectively with dumping and abandoning chemicals, waste products, etc., further allege that Niagara County was negligent in failing to warn and safeguard its citizens or enforce its health regulations, failing to remove chemicals and the plaintiffs from the Love Canal area and negligently and wrongly conveying property in the area without notice of the infirmities contained and in violation of ordinances and regulations. Clearly, these allegations fall outside the disputed pollution exclusion provision of the policy. The general rule is that the insurer must defend provided that some of the allegations fall within the coverage provisions of the policy, even though others do not (see *Michigan Millers Mut. Ins. Co. v Christopher*, 66 AD2d 148, *supra*). In order for the insurer to be relieved from its duty to defend, the insurer must "demonstrate that the allegations of the complaint cast that

pleading solely and entirely within the policy exclusions, and, further, that the allegations, *in toto*, are subject to no other interpretation" *(International Paper Co. v Continental Cas. Co.*, 35 NY2d 322, 325). In the instant case, Utica Mutual has failed to meet that burden.

■ Special Term properly denied Niagara County's application to include in its award of expenses in defending the underlying actions, the expenses incurred in bringing this proceeding for declaratory judgment. "It is the rule in New York that such a recovery may not be had in an affirmative action brought by an assured to settle its rights *(Doyle v Allstate Ins. Co.*, 1 NY2d 439; *Grimsey v Lawyers Tit. Ins. Corp.*, 31 NY2d 953), but only when he has been cast in a defensive posture by the legal steps an insurer takes in an effort to free itself from its policy obligations (see *Johnson v General Mut. Ins. Co.*, 24 NY2d 42; *Glens Falls Ins. Co. v United States Fire Ins. Co.*, 41 AD2d 869, affd on opn below 34 NY2d 778)." *(Mighty Midgets v Centennial Ins. Co.*, 47 NY2d 12, 21.)

The record on appeal is insufficient to make a determination of the question of waiver and estoppel of Utica Mutual's denial of coverage but in any event, we find it unnecessary to reach the issue.

The judgment of Special Term should be affirmed.

DILLON, P. J., CARDAMONE, DENMAN and MOULE, JJ., concur.

Judgment unanimously affirmed, without costs.