**EAD METALLURGICAL, INC., E. Lee Walker, Norman F. Ernst, Jr., John B. Fisher, C. Victor Raiser, II, Anthony C. Madonia and 71 Pearce Avenue, Inc., Plaintiffs,**

v.

**AETNA CASUALTY & SURETY COMPANY, North River Insurance Company and American Nuclear Insurers, Defendants.**

Civ. No. 86–1027E.

United States District Court, W.D. New York.

July 12, 1988.

Terrence M. Connors, Buffalo, N.Y., for plaintiffs.

James R. Walsh, Thomas F. Segalla, Buffalo, N.Y., Kreag Donovan, Rochester, N.Y., for defendants.

## MEMORANDUM AND ORDER

ELFVIN, District Judge.

The plaintiffs bring this declaratory action to compel the defendants Aetna Casualty & Surety Company ("Aetna") and North River Insurance Company ("North River") to defend them, pursuant to their contractual obligations with EAD Metallurgical, Inc. ("EAD") in a federal action commenced by New York. That action is CIV–85–1085E and is pending before this Court. The individual plaintiffs in this action were named as third-party defendants by 71 Pearce Avenue, Inc. ("Pearce") in CIV–85–1085E which alleges that EAD and Pearce are liable under the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9601 *et seq.* ("CERCLA") and New York's common law of restitution and public nuisance for "dispos[ing] of and/or arrang[ing] for the disposal of americium–241 into the [Town of Tonawanda's] sewer system, and ultimately into the Town's sewage treatment plant and landfill." Complaint ¶ 10, CIV–85–1085E.

Aetna and North River rely on three exclusionary provisions in their respective policies with EAD that purportedly relieve them of their duty to defend. Presently before this Court are the plaintiffs' and North River's cross-motions for partial summary judgment regarding the duty to defend. Aetna seeks judgment on that issue as well as on the duty to indemnify.

This action is governed by New York law which has construed an insurer's duty to defend as "exceedingly broad." *Colon v. Aetna Life and Cas. Ins. Co.,* 66 N.Y.2d 6, 8, 484 N.E.2d 1040, 1041, 494 N.Y.S.2d 688, 689 (1985). "If, liberally construed, the claim is within the embrace of the policy, the insurer must come forward to defend its insured no matter how groundless, false or baseless the suit may be * * *." *Ruder & Finn Inc. v. Seaboard Sur. Co.,* 52 N.Y.2d 663, 670, 422 N.E.2d 518, 521, 439 N.Y.S.2d 858, 861 (1981).

Standard language contained in both Aetna's and North River's policies provides essentially that coverage will not apply to damage caused by the release of pollutants into the environment ("the pollution exclusion") unless that release is sudden and accidental, to damage to property owned or leased by the insured (the "insured's own

property" exclusion) [1] or to damage that is also covered under a nuclear energy liability policy ("the nuclear exclusion"). By reason of any one of these exclusions, the defendants argue, the claim falls outside of "the embrace of the policy."

■ It is alleged that the radioactive isotope, americium–241, was utilized by EAD in its business of manufacturing smoke detectors and that illegal concentrations of that substance were released from its plant throughout the time it was in operation— *i.e.*, from 1977 through 1983. Complaint ¶¶ 8–10 in CIV–85–1085E. The ongoing nature of the contamination would appear to prevent the plaintiffs from asserting the applicability of the exception to the pollution exclusion. The origin of such exclusion and exception is statutory and the contractual language tracks section 46 of New York's Insurance Law: [2]

"This insurance does not apply:

\*     \*     \*     \*     \*     \*

(f) to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; *but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.*" Quoted in *Niagara County v. Utica Mut. Ins. Co.,* 80 A.D.2d 415, 439 N.Y.S.2d 538, 540 (4th Dep't 1981). (Emphasis added.)

Some of New York's intermediate appellate courts have not interpreted this language literally but have striven to give it instead its "ordinary and popular meaning." *Allstate Ins. Co. v. Klock Oil Co.* ("*Klock*"), 73 A.D.2d 486, 426 N.Y.S.2d 603, 605 (4th Dep't 1980). Thus, when an allegedly negligently installed tank resulted in the leakage of gasoline into the

ground undetected for a long period of time, a duty to defend was nevertheless found. *Ibid.* Construed in its relevant context—that is, in its context as a term in an insurance policy—"sudden" was given the construction most favorable to the insureds. The Court held that, regardless of the time period involved, the factual presentation involving an undetected gasoline leak could be considered an accident and that, although the substance could have been contaminating the soil for a considerable time, its actual escape from the tank might have been sudden. The Court further opined that "sudden" need not be confined to an instantaneous happening and that, regardless of the time involved, if the resulting damage could be viewed as unintentional the situation could be deemed accidental and beyond the scope of the pollution exclusion. *Ibid.*

In *Farm Family Mut. Ins. Co. v. Bagley* ("*Bagley*"), 64 A.D.2d 1014, 409 N.Y.S.2d 294 (4th Dep't 1978), coverage was also upheld through the application of the general principle that ambiguities in policy language were to be construed against the insurer. The damage in *Bagley* was caused when the defendants sprayed onto their own property a chemical substance that drifted onto the plaintiff's land more than 100 feet away. The original release of the chemical on the defendant's land was intentional, but its dispersal to the plaintiff's property could be characterized as accidental. The ambiguity as to which "dispersal" was relevant permitted the court to find in favor of the insured on the issue of the pollution exception's applicability.

■ Several actual polluters and the County of Niagara were named as defendants in an underlying suit in *Niagara County v. Utica Mut. Ins. Co.,* 80 A.D.2d 415, 439 N.Y.S.2d 538 (4th Dep't 1981).

---

**1.** In the underlying federal action, Pearce cross-claimed against its co-defendants on several theories of liability. Pearce is the owner of the site of EAD's operations, and it is with regard to the cross-claim that the defendant insurance companies assert the "insured's own property" exclusion.

**2.** The policies relevant to this motion were issued when section 46 was in effect—that is, before the 1984 recodification of New York's Insurance Law.

Because that complaint expressly contained claims against the County—such as, failure to warn and safeguard its citizens—that clearly fell outside the pollution exception language in the policy, the insurance company was obligated to defend. Where a claim that may be within the policy's coverage appears in a complaint, the fact that other claims outside the policy—*i.e.,* claims excluded by the pollution exceptions—are also asserted does not relieve an insurer of its duty to defend. *See, Seaboard Sur. Co. v. Gillette Co.,* 64 N.Y.2d 304, 310, 476 N.E.2d 272, 275, 486 N.Y.S.2d 873, 876 (1984).

In addition to the above cited Fourth Department cases the plaintiffs rely on *National Grange Mut. Ins. v. Continental Cas. Ins.,* 650 F.Supp. 1404 (S.D.N.Y.1986). The underlying claim by New York pursuant to CERCLA sought to hold a smelting operation liable for damage caused by ash it had deposited in various sites over a period of several years. During much of that time the defendant smelters were not alleged to have known of the hazardous nature of their waste. The negligence portions of that complaint plus New York's predeliction for construing insurance contracts in favor of insureds caused that Court to find a duty to defend. In so doing, it claimed to rely on both *Klock* and *Bagley.* This Court, while declining to adopt the defendants' description of those decisions as aberrational, does not interpret them to dictate the same result as was reached in *National Grange.*

Each of the New York cases is distinguishable from the instant action. In *Klock,* the damage was undetected and unintentional. The Court noted that an unforeseen leak in the gas tank was exactly the type of accident for which the insured would believe himself to be covered. *Klock, supra,* 426 N.Y.S.2d at 605. EAD's disposal of americium–241 into the township's sewer system over a period of seven years is not comparable. The instant Complaint does not allege it to have been either unknowing or accidental. Also, it was not sudden, even as described by *Klock*—that is, where the original release may be seen as one brief event although the subsequent spread of the contaminant is gradual, the discharge may still be deemed sudden. The language of the Complaint is consistent in its portrayal of the alleged acts of pollution as ongoing. It is alleged that the disposal of americium–241 took place throughout EAD's seven years of operation (¶¶ 8 & 10), that there was contamination and continued contamination (¶ 28), that there was continued presence and migration of americium–241, (¶ 32), that the defendants caused and continue to cause a public nuisance (¶ 48) and that after EAD ceased to operate it repeatedly ignored New York's Department of Labor's administrative orders to decontaminate the site (¶¶ 18–21). Clearly the claims are not grounded in sudden or accidental conduct. Likewise, the unintentional nature of the secondary dispersal to the plaintiff's land in *Bagley* has no parallel in the instant case. EAD, having allegedly dumped its waste into the sewers, cannot protest that it did not realize how far into the system it would be carried. Even the contamination of the landfill that utilized treated waste was a reasonably foreseeable result of EAD's actions as alleged. *See, Mary & Alice Ford Nurs. Home v. Fireman's Ins.,* 86 A.D.2d 736, 446 N.Y.S.2d 599, 601 (3d Dep't 1982) (distinguishing unintended though foreseeable events such as occurred in *Bagley* from the intended results of an intentional act). *Niagara County v. Utica Mut. Ins. Co., supra,* ordered coverage for an entity that was not an actual polluter and, as noted above, was one charged with claims clearly outside the pollution exception.

Based upon these dissimiliarities this Court opines that none of these decisions or combination thereof directs the conclusion urged upon us by the plaintiffs. Moreover, to find that EAD under these circumstances falls outside the pollution exclusion would be to render such exclusion almost entirely meaningless, thereby flouting New York's strong policy of encouraging a clean environment by eliminating "subsidized pollution." Such policy was expressly acknowledged by the decisions relied upon by the plaintiffs. *National Grange, supra,* at 1411; *Niagara County, supra,* 439 N.Y.S.2d at 540; *Klock, supra,*

426 N.Y.S.2d at 604. Even if these decisions militated more definitely in favor of coverage this Court would be free to reject them if it felt that New York's Court of Appeals would either refuse to adopt them or decline to extend their holdings to a case with a factual presentation substantially identical to the one before this Court. *See, Commissioner v. Estate of Bosch*, 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967).

Because we find that the movants are relieved of their duty to defend by virtue of the pollution exclusion, it is unnecessary to discuss the remaining exclusions.

The plaintiffs have made a broad assertion that the duty to indemnify, as opposed to the duty to defend, involves unsettled issues of material fact. However, having found that the pollution exclusion applies, this Court fails to perceive what factual issues bar the granting of Aetna's motion regarding its duty to indemnify. By the express terms of the exclusion, claims for bodily injury and/or property damage will not be covered where circumstances are such that said exclusion becomes operable.

Accordingly, it is hereby ORDERED (1) that the plaintiffs' motion for partial summary judgment is denied; (2) that defendant North River's motion for partial summary judgment is granted; and (3) that defendant Aetna's motion for summary judgment is granted.