**STATE OF NEW YORK, Plaintiff,**

v.

**AMRO REALTY CORP., Harry Moskowitz, and David Moskowitz, Defendants & Third–Party Plaintiffs,**

v.

**ZURICH INSURANCE CO., Atlantic Mutual Insurance Co., Unigard Security Insurance Co., Lumbermens Mutual Casualty Co., Graphic Arts Mutual Insurance Co., Federal Insurance Co., First State Insurance Co., and Home Insurance Co., Third–Party Defendants.**

**No. 86–CV–1318.**

United States District Court,
N.D. New York.

Oct. 11, 1988.

Robert Abrams, Atty. Gen. of N.Y., Albany, N.Y., for plaintiff; David A. Munro, Asst. Atty. Gen., of counsel.

Rosenman & Colin, New York City, for defendants and third-party plaintiffs; Richard L. Claman, of counsel.

Thuillez Ford Conolly & Kelly, Albany, N.Y., for third-party defendant Lumbermens Mut.

Barry McTiernan & Moore, New York City, for third-party defendant Atlantic Mut.; Michael Close, of counsel.

James S. Rowen Associates, New York City, for third-party defendant Graphic Arts Mut.; James S. Rowen, of counsel.

Rogers & Wells, New York City, John T. Wilkins, of counsel, Williams Micale & Wells, Syracuse, N.Y., for third-party defendant Federal Ins., Peter N. Wells, of counsel.

Drinker Biddle & Reath, Washington, D.C., for third-party defendant Lumbermens Mut., Timothy C. Russell, Patricia A. Gotschalk, of counsel.

Siff Rosen & Parker, New York City, Stephen Jacobs, of counsel, Twining Nemia Hill & Steflik, Binghampton, N.Y., for third-party defendant First State Ins.

Damon & Morey, Buffalo, N.Y., for third-party defendant Unigard Sec., Andrew Feldman, Barbara L. Schifeling, of counsel.

Mound Cotton & Wollan, New York City, for third-party defendant Home Ins.; Lawrence S. Greengrass, of counsel.

Phelan, Pope & John, Ltd., Chicago, Ill.

A. Mark Pellegrino, Albany, N.Y.

William M. Gruner, New Paltz, N.Y., Trustee for American Thermostat.

McCURN, Chief Judge.

## MEMORANDUM DECISION AND ORDER

### BACKGROUND

In 1981, New York State environmental officials discovered pollution at a site owned by defendant Amro Realty Company (AMRO) and leased to a manufacturer, American Thermostat Corporation (AT) at South Cairo, New York. That same year the State of New York and several private resident citizens brought suits against AT and AMRO based on New York common and statutory law alleging that defendants had engaged in pollution from the early 1950's through 1981 by disposing solvents including tetrachloroethylene and trichloroethylene into drains and septic systems (the state actions).

In 1983, the parties in the state actions entered into an interim consent decree. The decree provided, among other things, that the defendants would take remedial measures and provide nearby residents with bottled water. The state action defendants apparently complied with the decree until 1985, when AT was forced into bankruptcy by its creditors. After the break in compliance, the State of New York, in March of 1986, notified the

present defendants of its intention to sue under the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA or Superfund). The pending action is the CERCLA action promised by the State. In it, the State seeks to hold AMRO, Harry Moskowitz and David Moskowitz (the insureds) jointly and severally liable for all damages and response costs incurred by the State.[1]

Two additional filings were made subsequent to the commencement of the State's CERCLA action. First, the insureds have commenced a third-party action against their primary and excess insurers during the relevant periods.[2] That action contains three counts. In count one the third-party plaintiffs allege that the insurers are obligated to indemnify the insureds in the CERCLA action. In count two the third-party plaintiffs allege that the insurers are obligated to defend the insureds in that action. In count three, the third-party plaintiffs seek a declaration that they are entitled to counsel of their own choice. Second, the United States commenced a similar CERCLA action against the same defendants in 1987.

■ These actions have produced a plethora of motions, several of which were disposed of from the bench at oral argument on January 19, 1988. The court granted: (1) the motion by the United States to consolidate its action with that of the State of New York; (2) the motion by the insureds to strike the subject matter jurisdiction defenses of third-party defendants Federal, Home, and First State; (3) the motion by the insureds for a stay of discovery; and (4) the motion by third party defendant Unigard to amend its answer. The court denied: (1) the motion by the insureds to strike affirmative defenses,

---

1. The Moskowitzes are named rather than AT because (1) AT has been placed in involuntary bankruptcy, and (2) the Moskowitzes were principals in both AT and AMRO. All of the defendants are alleged to be "owners" or "operators" within the contemplation of Section 107 of CERCLA, 42 U.S.C. § 9607. (See paragraphs 36 and 37 of the CERCLA complaint.)

2. The primary insurers concerned with these motions are Atlantic Mutual Insurance Company, Unigard Security Insurance Company, and Lumbermens Mutual Casualty Company. The excess carriers are Federal Insurance Company, Home Insurance Company, and First State Insurance Company. Throughout the balance of this opinion, these insurers will be referred to respectively as Atlantic, Unigard, Lumbermens, Federal, Home, and First State.

other than the subject matter jurisdiction defense, of third-party defendants Federal, Home and First State; (2) the motion by the insureds for attorneys fees and costs; and, (3) the motion by Federal to compel discovery. Presently pending before the court is a motion by the insureds for partial summary judgment against Lumbermens and Unigard with respect to count II of the third-party complaint and cross motions by those same third-party defendants for summary judgment dismissing the insureds' complaint.[3]

## DISCUSSION

■■■■ Although this case appears to be procedurally complex, the issues presently before the court are rather narrow. Both Lumbermens and Unigard issued primary comprehensive general liability coverage within the alleged pollution period.[4] Both policies contained a timely notification clause. In addition the Unigard policy contained a pollution exclusion clause. Wheth-

er those clauses are applicable here is the question before the court on this motion.[5]

### A. Timeliness of Notice to Insurers

It is undisputed that the first notice received by Lumbermens in regard to pollution at the site was by letter dated August 14, 1985. (Attachment 1 to the affidavit of Charles C. Leone) That letter, sent by the insured's present counsel, informed Lumbermens of the 1981 actions and the 1983 interim consent decree. Counsel also requested that Lumbermens defend and indemnify AT and AMRO in the 1981 actions. Moreover, it is uncontroverted that the first notice received by Unigard in regard to pollution at the site was by letter dated April 10, 1986. (Exhibit C of insureds' moving papers) That letter, also sent by the insureds' present counsel, informed Unigard of the 1981 actions and the 1983 interim consent decree. It also informed Unigard that the insureds had been notified by the State of this promised CERCLA action. Counsel finally requested that Uni-

3. The insureds' motion was also originally made against Atlantic. Moreover, Atlantic made a cross-motion as well. These motions have been withdrawn, upon Atlantic's agreement to provide insureds with a defense in the CERCLA action. Lumbermens and Unigard argue that such an agreement moots the insureds' motion. That is not so in that while Atlantic has agreed to pay future defense costs, it has not agreed to pay all of the insureds' defense costs incurred to date. A live controversy is presented at least in that regard and also with regard to Lumbermen's and Unigard's motions for summary judgment.

4. Lumbermens issued a combination auto/general liability policy to AT, with AMRO as an additional named insured, for a policy period from January 1, 1969 to January 1, 1970. Unigard, as successor to Jamestown Mutual Insurance Company and Unigard Jamestown Mutual Insurance Company, provided AMRO and AT similar insurance coverage from January 1, 1972 to January 1, 1974.

5. Several other issues have been raised in the cross-motions. The policies provided for "property damage" that occurred "during the policy period." Insurers argue that property damage is deemed to occur, at least for the purpose of triggering coverage, only at the time such damage was first discovered. Here, since the damage was first discovered in 1981, the insurers argue that their coverage, for policy periods of the years 1969, 1972 and 1973, was not trig-

gered. Insureds argue, on the other hand, that coverage is triggered when property is "injured in fact" and that since the present state complaint alleges that pollution occurred during policy years, as well as others, the insurers have a duty to defend against such allegations. The court is inclined to agree with the insureds. See, *American Home Products Corp. v. Liberty Mutual Ins. Co.*, 748 F.2d 760 (2d Cir.1984) and *Burroughs Wellcome Co. v. Commercial Union Ins. Co*, 632 F.Supp. 1213 (S.D.N.Y.1986).

Moreover, the policies provided that the insurer would pay all "sums which the insured shall become legally obligated to pay as damages." (Exhibits L, M & N of the Third–Party Complaint) Unigard contends that it has no duty to defend or indemnify because the present CERCLA complaint does not seek "damages." Lumbermens, while apparently conceding that at least a portion of the present complaint seeks damages (See Trans. of Oral Argument at pp. 23–30), argues that it should not have to indemnify insureds for those claims that do not seek "damages." Insureds contend, on the other hand, that CERCLA clean up costs are covered "damages" because the proper determination of whether an expense constitutes "damages" should be made from the reasonable expectation of an insured. Here too the court is inclined to agree with the insureds. See, *Powers Chemco, Inc. v. Federal Insurance Co.*, 122 A.D. 2d 203, 504 N.Y.S.2d 738–739 (2 Dept.1986). These questions become moot, however, in light of the court's decision to follow herein.

gard defend and indemnify AMRO, Harry Moskowitz, and David Moskowitz.[6]

Both Lumbermens and Unigard argue that these notices, some four years after the 1981 discovery of pollution and institution of the state actions, failed to provide timely "notice of occurrence" to the insurers as required by the notice provisions of the respective insurance contracts set forth below:

> Insured's Duties in the Event of Occurrence, Claim or Suit. (a) In the event of an occurrence, written notice containing particulars sufficient to identify the insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and names and addresses of the injured and of available witnesses, shall be given by or for insured to the company or any of its authorized agents as soon as practicable [after the insurance manager or any executive officer of the insured has knowledge of such occurrence]. The named insured shall promptly take at his expense all reasonable steps to prevent other bodily injury or property damage from arising out of the same or similar conditions, but such expense shall not be recoverable under this policy. (b) If claim is made or suit is brought against the insured, the insured shall immediately forward to the company every demand, notice, summons or other process received by him or his representative. (Lumbermens)

> \* \* \* \* \* \*

> 4(a). In the event of an occurrence, written notice containing particulars sufficient to identify the insured and also reasonably obtainable information with respect to the time, place, and circumstances thereof and the names and addresses of the injured and of available

witnesses, shall be given by or for the insured to the company or any of its authorized agents, as soon as practicable. (b). If claim is made or suit is brought against the insured, the insured shall immediately forward to the company every demand, notice, summons, or other process received by him or his representative. (Unigard)

Both clauses above provide for two types of notice: notice of occurrence and notice of claim or suit. The insurers' argument is directed to the notice of occurrence provision.[7]

■ "Under New York law, ... compliance with the notice of occurrence requirement [is] a condition precedent to all of [an insurers] duties under the policy, including the duty to defend." *Commercial Union Ins. Co. v. Int'l Flavors & Fragrances, Inc.*, 822 F.2d 267, 271–73 (2d Cir.1987). Both policies at issue required the insureds to notify the insurer in writing "as soon as practicable" after the insured becomes aware of an "occurrence" (as distinguished from a claim or suit where notice is supposed to be immediate). "The test for determining whether [a notice of occurrence] provision has been triggered is whether the circumstances known to the insured at that time would have suggested to a reasonable person the possibility of a claim." *Id.* at 272. There can be little dispute that the circumstances in 1981 would suggest to a reasonable person the possibility of a claim. First, the state and the individual plaintiffs had actually filed suits on state law grounds. (See the 1981 Summons and complaint contained at exhibit one of Lumbermen's Appendix) Second, and more telling, the insureds provided another insurer, Atlantic, with notice of the 1981 "occurrence". (See pages 30–31 of the Insureds' Memo of law)

---

**6.** Lumbermens also received a similar letter bearing the same date. (Exhibit D of insureds' moving papers).

**7.** Neither insurer can reasonably argue that the insureds did not comply with the notice of claim or suit provisions with regard to the pending CERCLA claims. By letter dated March 19, 1986, the State informed the insureds of its intention to sue. The insureds responded by informing third-party defendants of this looming action by the April 10, 1986 letters discussed above. Moreover, soon after the State filed the present lawsuit in December of 1986, the insureds forwarded copies of the complaint to the insurers and scheduled a meeting to discuss indemnification and defense. See e.g. attachment 3 to the affidavit of Patricia Gotshalk.

Having been apprised of the possibility of a claim in 1981, the insureds had the duty to notify the insurers "as soon as practicable" thereafter. The provision that notice be given "as soon as practicable" after an occurrence merely requires that notice be given within a reasonable time under all the circumstances. *Security Mutual Ins. Co. v. Acker–Fitzsimons Corp.,* 31 N.Y.2d 436, 441, 340 N.Y.S.2d 902, 906, 293 N.E.2d 76, 79 (1972). Ordinarily, the reasonableness of any delay is a matter for trial. In the absence of an excuse or mitigating factors, however, the issue is a legal one for the court; and, in such circumstances, relatively short periods have been found to be unreasonable as a matter of law. *Jenkins v. Burgos,* 99 A.D.2d 217, 218–21, 472 N.Y.S.2d 373, 375–76 (1st Dep't 1984). *See also Power Authority v. Westinghouse Electric Corp.,* 117 A.D.2d 336, 502 N.Y.S.2d 420 (1st Dep't 1986) (53 day delay unreasonable); *Patten v. Nagy,* 86 A.D.2d 890, 447 N.Y.S.2d 334 (2d Dep't 1982) (one year delay unreasonable).

■ The insureds claim that there are excuses for their delay in notifying the insurers of the 1981 "occurrence." They argue that they should be excused because their notice would have been futile. They claim that even if they had provided earlier notice, the insurers would not have acted upon such notice in light of the "standard industry position" that pollution incidents were excluded from coverage on comprehensive general liability policies. The insureds cite two Second Circuit cases for the proposition that "where an insurer has communicated generally that it will disclaim coverage to a claim, notice to such an insurer has been recognized to be futile, and unnecessary." (See insureds' memo at page 31, citing *HS Equities Inc., v. Hartford Accident and Indem. Co.,* 609 F.2d 669, 673 (2d Cir.1979) & *Rock Transport Properties Corp. v. Hartford Fire Ins. Co.,* 433 F.2d 152, 154 (2d Cir.1970)). These cases do not support the insureds' "futility" argument.[8] Moreover, there is a lack of any reported authority for the proposition that "futility" constitutes a valid excuse for timely notice of occurrence.[9] Consequently, the court does not accept the insureds' futility argument as a legal excuse for untimely notice of occurrence.

■ In addition, Harry and David Moskowitz claim that they are excused from timely notice because they were not named in the 1981 state action. Since they were first named in the 1986 CERCLA action they argue that they had no duty to notify the insurers until they became aware of that action. This argument fails to recognize the distinction between notice of occurrence and notice of claim. The notice of occurrence requirement is triggered when an insured has obtained facts that would cause a reasonable person to recognize that there had been a loss, *Utica Mutual Ins. Co. v. Fireman's Fund Ins. Co.,* 748 F.2d 118, 121–22 (2d Cir.1984), not upon the receipt of a complaint. Assuming that the Moskowitzes were insureds,[10] the question is whether, in 1981, they were in a position to obtain facts from which they should have reasonably recognized that there had been a loss. Given their positions with AMRO and AT, they may be charged with constructive knowledge of the discovery of pollution in 1981.[11] That knowledge would

---

**8.** In *H.S. Equities,* the court merely relieved the insured of the obligation to obtain the insurer's consent to a settlement agreement after the insurer had already disclaimed coverage. The insured had already complied with its original duty of notice of the occurrence. In *Rock Transport Properties,* the insured had also complied with the notice requirement.

**9.** Most litigation regarding excuses appears to involve either lack of knowledge on behalf of the insured that an accident has occurred or a good faith belief by him of non-liability. *See Security Mutual Ins. Co. v. Acker–Fitzsimons Corp.,* 31 N.Y.2d 436, 340 N.Y.S.2d 902, 293 N.E.2d 76 (1972).

**10.** At oral argument there was some dispute over whether David Moskowitz was an insured on at least the Lumbermen's policy. Given the result reached by the court, the resolution of that dispute is immaterial.

**11.** In 1981, Harry Moskowitz was a director and president of AT. He was also a director and president of AMRO. David was Executive Vice-President of AT. He held no position with respect to AMRO.

certainly have caused a reasonable person to recognize that there had been a loss.

 Because the court has determined that the insureds had no valid excuse for delay, the reasonableness of the delay becomes an issue of law. *Jenkins*, 99 A.D.2d at 218, 472 N.Y.S.2d at 375–76. As the Second Circuit recently noted:

> An insurance company is entitled to require notice at the earliest time practicable after a loss has occurred. Prompt notice permits the insurer to investigate the facts on which the claim is predicated and to adjust its books in order to maintain a proper reserve fund in light of the insured's claim.

*Utica Mutual Ins. Co.*, 748 F.2d at 121. In light of the purpose of requiring prompt notice, the insured's delay of four years was unreasonable and fails to meet the policy's requirements for providing notice of occurrence "as soon as practicable."

Because compliance with the notice of occurrence requirement is a condition precedent to an insurers' duty to defend, *Commercial Union*, 822 F.2d at 271–73, summary judgment in favor of at least Unigard is appropriate. The insureds argue, however, that Lumbermens has waived its right to rely on the late notice defense. After the insureds informed Lumbermens of the 1981 suit and 1983 consent decree by letter dated August 14, 1985, Lumbermens responded in a letter dated November 11, 1985. (Exhibit J of insureds' moving papers[12]) That letter disclaimed coverage with respect to the state action for several reasons, none of which included the untimely notice of occurrence defense. Subsequently, by letter dated April 10, 1986, the insureds informed Lumbermens that the State of New York had advised insureds that it intended to commence the present CERCLA action, and requested that Lumbermens assist them in defense of both the 1981 state action and the anticipated CERCLA action.[13] Lumbermens responded to the April 10 letter by letter dated May 5, 1986. (See Exhibit J or insureds' moving papers) That letter also declined coverage and referred insureds back to the November 11, 1985 disclaimer letter discussed above. Insureds argue that by failing to raise the late notice of occurrence defense in the letters of November 11, 1985, and May 5, 1986, Lumbermens waived its right to now claim that defense.

Lumbermens argues that its pre-suit communications with the third-party plaintiffs cannot be held to constitute a waiver. It asserts essentially that the notification of an occurrence allows the insurer the opportunity to act to facilitate settlement or prevent further loss. The notification of the suit itself, however, is what actually raises the question about coverage or the duty to defend. Lumbermens was provided with a copy of the present CERCLA complaint by letter from insured's counsel dated December 10, 1986. (Attachment 3 to the affidavit of Patricia A. Gotschalk) Lumbermens disclaimed coverage by letter dated January 23, 1987. (attachment 4 of the Leone affidavit) Insured's late notice was among the reasons for disclaimer contained in the January 23 letter. Lumbermens claims that its earlier letters cannot be construed as intentional relinquishments of a known defense—a necessary condition of waiver. *See Commercial Union*, 822 F.2d at 274. In support of its position, Lumbermens has submitted the affidavit of its claims representative, Leone, in which he affirms that Lumbermens never intended to relinquish its rights to assert the untimely notice defense.

 "It is settled that when one specific ground of forfeiture is urged against the claim, and a refusal to pay is based upon the specific ground, all other grounds are waived." *Luria Bros. v. Alliance As-*

---

12. The November 11 letter makes reference to insureds' letter of August 29, 1985. The court has not been presented with a letter of said date. Its appears uncontroverted, however, that the November 11, 1985 letter of Lumbermens was in actuality addressed to insureds letter of August 14, 1985.

13. The present CERCLA action was only anticipated at the time in that the complaint was not filed until December 2, 1986, some six months after the April letter from insureds to Lumbermens.

*surance Co. Ltd.*, 780 F.2d 1082, 1090 (2d Cir.1986).[14]

In *Commercial Union*, however, the Second Circuit noted that "[i]t is clear that waiver is a proper issue for the trier of fact." *Commercial Union*, 822 F.2d at 267. Consequently, where, as here, a question of waiver is presented, summary judgment is inappropriate, unless the court determines that, as a matter of law, the pre-1986 suit communications of Lumbermens cannot constitute a waiver. The court so determines. The duty to defend arises if the complaint alleges any facts which, if proved, would establish liability of the carrier under the coverage of the policy. *McGroarty v. Great American Insurance Co.*, 43 A.D.2d 368, 351 N.Y.S.2d 428 (2d Dep't 1974), *aff'd* 36 N.Y.2d 358, 368 N.Y. S.2d 485, 329 N.E.2d 172 (1975). Therefore, the obligation to defend does not arise until said complaint is forwarded to the insurer. The present CERCLA complaint was not forwarded to Lumbermens until December 1986. Consequently the duty to defend this suit did not arise until that time. It is not rational to infer that Lumbermens waived a defense against this duty to defend, *before* that duty ever arose. Given that Lumbermens timely disclaimed on the late notice defense by letter dated January 23, 1987, and insureds produced no other evidence, other than the pre-suit letters that Lumbermens intentionally waived its right to assert that defense, Lumbermens is also entitled to summary judgment dismissing the complaint due to insureds'

failure to provide a timely notice of occurrence.

### B. Pollution Exclusion Clause [15]

The Unigard policies at issue contained the standard industry insuring clause for comprehensive general liability policies:

"The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of

A. bodily injury or

B. property damage

to which this insurance applies, *caused by an occurrence*, and the company shall have the right and duty to defend any suit against the insured on account of such bodily injury or property damage, even if the allegations of the suit are groundless, false or fraudulent ... (emphasis supplied)

The 1973 version of the Unigard policy defined "occurrence" as:

"an *accident*, including continuous or repeated exposure to conditions, which results, during the policy period, in bodily injury or property damage neither expected nor intended from the standpoint of the insured." [16] (emphasis supplied)

Both policies also contained a "pollution exclusion clause." That clause provided:

"It is agreed that the insurance does not apply to bodily injury or property damage arising out of the discharge, dispersal, release, or escape of smoke, vapors, soot, fumes, acids, alkalies, toxic chemicals, liquid or gases, waste materials or

---

**14.** Insureds also argue that § 3420(d) of the New York Insurance Law provides a basis for their waiver argument. That section provides: (d) If under a liability policy delivered or issued for delivery in this state, an insurer shall disclaim liability or deny coverage for death or bodily injury arising out of a motor vehicle accident or any other type of accident occurring within this state, it shall give written notice as soon as is reasonably possible of such disclaimer of liability or denial of coverage to the insured and the injured person or any other claimant.

There is considerable dispute whether Section 3420(d) of the insurance law even applies to this case. The insurers argue that the section applies only to automobile accidents, while insureds argue that it involves all accidents. The

court need not address that dispute, for the plain language of the statute limits its applicability to accidents involving bodily injury or death. The CERCLA action does not involve bodily injury or death.

**15.** Only the Unigard policies contained a "pollution exclusion clause." Therefore, only Unigard has argued that such a clause relieves it of its duty to defend.

**16.** The 1972 definition was slightly different in that rather than covering "continuous or repeated exposure to conditions" it referred only to "injurious exposure to conditions." Since the 1973 version is more favorable to insureds here, the court will utilize that definition in the discussion.

other irritants, contaminates or pollutants into or upon land, the atmosphere or any watercourse or body of water, *but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.*" (emphasis supplied) (See Exhibits L & M of the third-party complaint) Unigard argues that the State's CERCLA complaint alleges that the release of chemicals was continuous for a period of more than twenty years, and that the disposal was the result of a purposeful and intentional part of the manufacturing process. Accordingly, whatever property damage was sustained was not the result of an occurrence which requires an "accident." Moreover, Unigard argues that even if the damage complained of resulted from an "occurrence," the "pollution exclusion clause" clearly takes the present claims out of the coverage provided. Finally, according to Unigard, the "sudden and accidental" exemption to the pollution exclusion clause does not apply here because there is no possible construction by which a twenty year release of chemicals as a normal part of the manufacturing process could be considered "sudden and accidental." The insureds contend, on the other hand, that under New York law as long as the complaint alleges in whole, or in part, that the alleged pollution was the result of something other than an intentional mistreatment of the environment, these clauses do not relieve the insurer of the duty to defend.

Under the doctrine of *Erie v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), this court must follow the New York Court of Appeals on issues of New York law. Although there are no opinions of that court which directly address the issues presented in this particular controversy, several intermediate appellate court opinions do exist, however; and, insureds urge that these opinions compel this court to find in their favor.

In *Allstate v. Klock,* 73 A.D.2d 486, 426 N.Y.S.2d 603 (4th Dep't 1980) the insured had installed an underground gasoline storage tank at his automobile dealership. A few years later, an adjoining landowner

sued the insured, among others, alleging that the gasoline storage tank had leaked and caused damage to the landowner's soil. The insurer refused to defend, contending that a pollution exclusion clause similar to the one at bar relieved it of its duty to defend or indemnify. The trial court agreed, but the Appellate Division unanimously reversed. The complaint had alleged that gasoline had "escaped" from the storage tank. The Appellate Court framed the question as whether " 'escape' can be found to be 'sudden and accidental' so as to avoid the [pollution] exclusion...." *Id.* at 487, 426 N.Y.S.2d at 604. The Court found that such an escape could be sudden and accidental. In so doing, the court noted that in the insurance context, an accident is anything that is "unexpected, unusual, and unforeseen" *Id.* at 488, 426 N.Y.S.2d at 605, and that sudden "need not be limited to an instantaneous happening." *Id.* Finally, the court determined that an event is sudden and accidental "regardless of the initial intent or lack thereof as it relates to causation, or the period of time involved, if the resulting damage could be viewed as unintended by the fact finder, the total situation could be found to constitute an accident.." *Id.* Relying on *Klock,* insureds here claim that so long as the complaint does not solely allege that the insureds intended to cause the pollution damage, there is a duty to defend.

In *Farm Family Mut. Ins. Co. v. Bagley,* 64 A.D.2d 1014, 409 N.Y.S.2d 294 (4th Dep't 1978) the insured had sprayed crops on the land of Howard Tuttle. A neighbor complaining that the crop spraying damaged his crops, brought suit. The insurer disclaimed based upon a pollution exclusion clause. The insurer argued that the crop spraying was intentional and not accidental and not exempt from the pollution exclusion clause. The Appellate Division, Fourth Department, disagreed, determining that although the spraying may have been intentional, the secondary dissemination to the neighbor's land was not. Construing the clause, [in accord with well settled state law] in favor of the insured, the court determined that the event may

have been sudden and accidental, and ordered the insurer to defend. The third party plaintiffs here claim that while the dumping of solvents may have been an intentional part of the manufacturing process, the subsequent dispersal was not.

In *Niagara County v. Utica Mutual Ins. Co.*, 80 A.D.2d 415, 439 N.Y.S.2d 538 (4th Dep't 1981), the insured, Niagara County, one of several defendants in the "Love Canal" litigation, sought to compel its insurer to defend. Niagara County had been charged with recklessly dumping and abandoning chemicals in the canal,[17] as well as failing to warn and safeguard its citizens or enforce its health regulations, failing to remove chemicals from the canal area, and wrongly conveying property in the area without notice of the infirmities contained therein. Id. at 419, 439 N.Y.S.2d at 541. The insurer refused to defend based on the pollution exclusion clause. After observing that the clause was the result of an attempt by the New York Legislature to discourage pollution,[18] the court refused to apply the exclusion. The Court determined that the clause was intended to apply only to actual polluters; and, because the complaint alleged that Niagara County was negligent in ways other than actually causing the pollution, the insurer had a duty to defend.[19] Id. at 417–20, 439 N.Y.S.2d at 540–41. Insureds argue here that while the pollution exclusion clause might have some applicability to AT, the alleged actual polluter, it has no application to them.

In addition to the above reported New York cases, there are two United States District Court cases which interpret relevant New York law in this regard.[20] In *National Grange Mutual Ins. Co. v. Continental Casualty Ins. Co.*, 650 F.Supp. 1404 (S.D.N.Y.1986), the State of New York had commenced a CERCLA action against a manufacturer and its principle stockholders and officers (insureds). The complaint alleged that insureds had, over an eleven year period, deposited large quantities of ash, a by-product of the smelting and refining process, at various places surrounding the plant. One of the insurers disclaimed coverage on the pollution exclusion clause.[21] The question presented to the court was substantially similar to that presented here: Whether an allegation of an eleven year period of dumping as part of the manufacturing process fit within the "sudden and accidental" exemption to the pollution exclusion clause.

The insurers presented to the court, as they do here, several decisions of other state jurisdictions which stand for the proposition that "where the insured was en-

---

17. Although the County had been charged with dumping chemicals, it was not seriously contended that the county actually dumped any contaminants. 80 A.D.2d at 418 n. 2, 439 N.Y.S. at 540 n. 2.

18. Inclusion of the standard pollution exclusion clause in all personal injury and property damage liability policies issued to commercial or industrial enterprises was required by Chapter 765 of the 1971 Session Laws which amended §§ 46(13) and (14) of the old Insurance Law. The requirement was withdrawn by the legislature effective September 1, 1982. 1982 *McKinneys Session Laws of New York*, Ch. 856.

19. The Appellate Division, Third Department, has also ruled that the pollution exclusion clause applies only to actual polluters. *See Autotronic Systems, Inc. v. Aetna Life & Casualty*, 89 A.D.2d 401, 456 N.Y.S.2d 504 (3d Dep't 1982).

20. There are also several lower New York State Court decisions which are relevant. *See e.g. Powers Chemco, Inc. v. Federal Ins. Co.*, 8462/85

(Sup.Ct. Nassau County 1987); *State v. INA Underwriters Ins. Co.*, 133 Misc.2d 430, 507 N.Y.S. 2d 112 (Sup.Ct. Alb. County 1986); *Technicon Electronics Corp. v. American Home Assurance Co.*, 08811/85 (Sup.Ct. Westchester County 1986). These cases add nothing to the analysis presented by the intermediate courts, however. Insureds also rely heavily on *Mercury Refining Co., Inc. v. Hartford Fire Ins. Co.*, 84–cv–495, a case in which Judge Miner, as a District Court Judge for this District, determined under assertedly similar circumstances that insurers had a duty to defend. Judge Miner did so by summary order without written opinion. Further, no party has provided the court with a transcript of any oral opinion rendered in that case. Under these circumstances, this court finds it difficult to ascribe any precedential value to *Mercury Refining*.

21. There were two insurers present in *National Grange*. One agreed to defend while the other did not. This distinction does not, however, affect the analysis of the court, or the application here.

gaged in a regular business activity as a result of which a pollutant was discharged, that such activity came within the pollution exclusion clause and that the discharge did not come within the 'sudden and accidental' exception to that clause." *Id.* at 1410. The court rejected those cases, however, and relied on *Klock* and *Bagley* to determine that the 'sudden and accidental' exception did apply.[22] *Id.* at 1410–12. In so doing, the court noted that an Appellate Division ruling "is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the State would decide otherwise. A reading of recent rulings by the New York State Court of Appeals does not indicate it would decide contrary to the Appellate Division ruling." *National Grange,* 650 F.Supp. at 1412.

A more recent decision by the United States District Court for the Western District of New York is contrary. In *EAD Metallurgical Inc. v. Aetna Casualty and Surety Co.,* Civ–86–1027E (W.D.N.Y.1988) [available on WESTLAW, 1988 WL 137365], the insureds had been named in a CERCLA and public nuisance action for disposing, as a result of a manufacturing process, a radioactive isotope into the Town of Tonawanda's sewer system over a five year period. The insurers disclaimed coverage based upon the pollution exclusion clause, among other things. The court agreed that the pollution exclusion clause did relieve the insurers of the duty to defend.

The Court recognized the decisions above, but declined to follow them. It distinguished *Klock,* determining that in *Klock,* the release of the gasoline might have been one brief event, although the subsequent spread of the contaminant may have been gradual. But, in the case at bar, the complaint portrayed the alleged acts of pollution as ongoing. *EAD,* Slip. op. at p. 6. It also distinguished *Bagley,* noting that in *Bagley,* the unintentional secondary dispersal of crop spray to the neighbor's land had no parallel to the case under consideration. "EAD," Judge Elfvin wrote, "having allegedly dumped its wastes into the sewers, cannot protest that it did not realize how far into the system it would be carried." *Id.* at 7. The Court found *Niagara* to be inapplicable because the insureds were alleged to be the actual polluters. *Id.* Finally, Judge Elfvin implied that even if these distinctions were not present, he would determine that the New York Court of Appeals would not follow the rationale of *Klock* and *Bagley* if presented with the case at hand. *Id.* at 8. Judge Elfvin noted that "to find that EAD under these circumstances falls outside the pollution exclusion would be to render such exclusion almost entirely meaningless, thereby flouting New York's strong policy of encouraging a clean environment by eliminating 'subsidized pollution.'" Id. at 7–8.

▆ The case at bar is similar to both *National Grange* and *EAD.* All three complaints allege continuing industrial pollution. The court finds Judge Elfvin's analysis more persuasive. Unlike *Klock,* there is no possibility here that the "escape" of the pollutants occurred through one brief event. Moreover, unlike *Bagley,* the insureds cannot claim that the secondary dispersal of contaminants was unintended. The present complaint is also dissimilar to that presented in *Niagara.* In Niagara, the County was alleged to have failed to warn and engaged in actionable activities other than actual pollution. Here, although the actual polluter (AT) is not named, all of the defendants are alleged to be "owners" or "operators" of that actual polluter and liable for their actual pollution. There are no allegations parallel to those present in *Niagara.*

Most importantly, this court has grave doubts that the New York Court of Appeals would conclude that a twenty year release of contaminants would fall within the "sudden and accidental" exception to the pollution exclusion clause and therefore need not be constrained to follow the inter-

---

**22.** The court recognized *Niagara County* and *Autotronics,* but determined that they were not relevant because they involved the question whether the pollution exclusion clause applied only to actual polluters, an issue that was not present, according to the court.

mediate court decisions discussed above. See *Competex, S.A. v. Labow,* 783 F.2d 333, 340 n. 16 (2d Cir.1986); *Roginsky v. Richardson–Merrell, Inc.,* 378 F.2d 832, 851 (2d Cir.1967) Those courts which have determined otherwise have started with the proposition that such terms are ambiguous. See *Klock,* 73 A.D.2d at 48, 426 N.Y.S.2d at 604; *Bagley,* 64 A.D.2d at 101, 409 N.Y.S. 2d at 295. This court cannot accept that proposition. There can be very little dispute that "sudden" means happening without previous notice or on very brief notice; unforeseen; unexpected; unprepared for, *Webster's New International Dictionary* (2d ed. unabridged 1954) and that "accidental" is defined as happening unexpectedly or by chance; taking place not according to usual course, *Id.* Even if the term accidental is determined from the insureds' point of view there is no use of the word "sudden" which is consistent with events transpiring over a twenty year period. As Judge Elfvin noted, such a construction of the word "sudden" would allow the exception to swallow the rule, rendering the pollution exclusion clause meaningless. This court doubts that the New York Court of Appeals would choose to emasculate an act of the legislature. Rather, the Court of Appeals would be persuaded by the logic of other courts which have addressed this issue and determined that allegations of continuous industrial pollution are clearly outside of the "sudden and accidental" exception to the pollution exclusion clause. *See e.g. U.S. Fidelity & Guarantee Co. v. Star Fire Coals,* 856 F.2d 31 (6th Cir.1988); *American Motorists Ins. Co. v. General Host Corp.,* 667 F.Supp. 1423 (S.D.Kan. 1987); *Claussen v. Aetna Cas. & Sur. Co.,* 676 F.Supp. 1571 (S.D.Ga.1987). The pollution exclusion clause relieves Unigard of its duty to defend.[23]

CONCLUSION

The insureds' motion for summary judgment is denied. The motions of Unigard and Lumbermens are granted and the

third-party complaint against them is dismissed.

IT IS SO ORDERED.

year release of chemicals did not constitute an "occurrence."

---

**23.** Since the court has determined that the pollution exclusion clause excludes coverage, it need not address the argument that the twenty