905 F.2d 8
 31 ERC 1361, 58 USLW 2735, 20 Envtl.
L. Rep. 20,930
 EAD METALLURGICAL, INCORPORATED, E. Lee Walker, Norman F.
Ernst, Jr., John B. Fisher, C. Victor Raiser, II,
Anthony C. Madonia, and 71 Pearce
Avenue, Incorporated,
Plaintiffs-Appellants,
v.
AETNA CASUALTY & SURETY COMPANY, North River Insurance
Company & American Nuclear Insurers, Defendants-Appellees.
 No. 763, Docket 89-7954.
 United States Court of Appeals,
Second Circuit.
 Argued Feb. 21, 1990.
Decided May 17, 1990.
 
 James J. Duane, Buffalo, N.Y. (Terrence M. Connors, Connors & Vilardo, Buffalo, N.Y., of counsel), for appellant EAD Metallurgical, Inc.
 Laura A. Foggan, Washington, D.C. (Thomas W. Brunner, Frederick S. Ansell, Wiley, Rein & Fielding, Washington, D.C., of counsel), for appellee Aetna Cas. and Sur. Co.
 Thomas F. Segalla, Buffalo, N.Y. (Richard A. Galbo, Laurence D. Behr, Saperston & Day, Buffalo, N.Y., of counsel), for appellee North River Ins. Co.
 Before FEINBERG, CARDAMONE, and MINER, Circuit Judges.
 CARDAMONE, Circuit Judge:
 
 
 1
 This is another case of the same sort as Avondale Industries, Inc. v. Travelers Indemnity Company, 887 F.2d 1200 (2d Cir.1989), reh'g denied, 894 F.2d 498 (2d Cir.1990) (per curiam), cert. denied, --- U.S. ----, 110 S.Ct. 2588, 110 L.Ed.2d 269 (1990), that seeks construction of the elusive pollution exclusion in general liability insurance policies which exempts coverage for pollution damage that is not both "sudden and accidental." Here unlike Avondale we hold that--because the insured's dispersal of pollutants was intentional and continuous--coverage was excluded under the applicable policies. Hence, we affirm.
 
 FACTS
 
 2
 This action arises from complex litigation involving damage to the environment resulting from the disposal of a radioactive substance, americium-241, into the sewer lines, sewage treatment facility and landfill of the Town of Tonawanda, New York. Americium-241 was produced in a facility owned by appellant EAD Metallurgical, Inc. (EAD) that manufactured foil elements for use in smoke detectors. The facility was located at 71 Pearce Avenue in Tonawanda township from 1977 through 1983.
 
 
 3
 In August 1985 the State of New York commenced an action in federal court against EAD and the owner of the land it occupied--71 Pearce Avenue, Inc. (Pearce)--alleging violations inter alia of the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C.A. Secs. 9601-9657 (West Supp.1990) (CERCLA). The State contended that[t]hroughout its operation, EAD disposed of and/or arranged for the disposal of americium-241 into the Town's sewer system, and ultimately into the Town's sewage treatment plant and landfill.
 
 
 4
 In its answer Pearce asserted third-party claims against certain officers, directors or stockholders of EAD, Inc. and cross-claimed against EAD for indemnification. Pearce subsequently brought an action in New York State Supreme Court against EAD and its President, claiming that they caused damage to the premises and the surrounding community through their negligent and reckless manufacture of foils containing americium-241.
 
 
 5
 EAD and the individuals named in Pearce's third-party complaint (collectively referred to as EAD) sought to be indemnified and defended in the state and federal actions pending against them by their general liability insurers, Aetna Casualty & Surety Company (Aetna) and North River Insurance Company (North River), and by their nuclear energy liability insurer, American Nuclear Insurers (Nuclear Insurers). EAD had three policies from Aetna that insured it from March 25, 1977 to March 25, 1982; a policy from North River that covered the period from March 25, 1982 to March 25, 1985; and a policy from Nuclear Insurers providing coverage from April 8, 1977 to January 5, 1984. Aetna and North River denied any obligation to indemnify or defend EAD. Nuclear Insurers has defended EAD in the CERCLA action.
 
 
 6
 EAD commenced the present suit in federal district court seeking a declaratory judgment that Aetna and North River are obligated to defend and indemnify it in the underlying federal and state actions. Appellants moved and appellees cross-moved for partial summary judgment regarding the insurers' duty to defend and/or indemnify. Both insurers relied upon two exclusions in their general liability policies: an exclusion for pollution damage that is not "sudden and accidental" (pollution exclusion), and an exclusion for damage that is covered by a nuclear energy liability policy (nuclear exclusion). North River made the additional argument that coverage was excluded under an exclusion for damage to property owned, occupied or rented to the insured (insured's own property exclusion).
 
 
 7
 Writing before we decided Avondale, the district court granted Aetna and North River summary judgment on the basis that North River was not bound to defend and Aetna was not bound to defend or indemnify EAD in the CERCLA action under the terms of the pollution exclusions of their insurance policies. The trial court did not reach the issue of whether the insurers would also be relieved of their respective duties under the nuclear exclusion or the insured's own property exclusion.
 
 
 8
 EAD appeals the district court's determination that Aetna and North River were not bound to defend or indemnify them under their policies' pollution exclusion.
 
 DISCUSSION
 
 9
 We review an appeal from a grant of summary judgment under Fed.R.Civ.P. 56(c) de novo. Although the record is considered in the light most favorable to the non-moving party, the non-movant must establish a genuine issue of material fact for reversal on appeal. See Delaware & Hudson Railway Co. v. Consolidated Rail Corp., 902 F.2d 174, 177-78 (2d Cir.1990). Here, EAD did not meet this burden.
 
 
 10
 Discussion necessarily must begin with the language of the exclusion. The pollution exclusion provides in pertinent part:
 
 
 11
 [This insurance does not apply] to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental [.]
 
 
 12
 See EAD, 701 F.Supp. at 401 (emphasis supplied). Appellants' principal argument is that the allegations set forth in the complaints in the underlying federal and state actions do not rule out the possibility that the discharge of americium-241 was sudden and accidental. We disagree.
 
 
 13
 Initially we note that the duty to defend is broader than the duty to indemnify. See Avondale, 887 F.2d at 1204. Thus, it is unnecessary to engage in a separate analysis of Aetna's independent claim that it has no duty to indemnify apart from both insurers' claims that they have no obligation to defend. See EAD, 701 F.Supp. at 403. To determine whether coverage is required, we must examine the complaints in the underlying actions and decide whether there are " 'any allegations that arguably or potentially bring the action within the protection purchased' " or a " 'reasonable possibility' " that coverage exists. Avondale Indus., Inc. v. Travelers Indem. Co., 894 F.2d 498, 500 (2d Cir.1990) (per curiam) (denial of rehearing) (quoting Avondale, 887 F.2d at 1204 and A. Meyers & Sons v. Zurich Am. Ins. Group, 74 N.Y.2d 298, 302, 546 N.Y.S.2d 818, 545 N.E.2d 1206 (1989)). In Avondale, we held that the allegations in the underlying complaint met this standard. Here, they do not.
 
 
 14
 The allegations in the underlying complaint in Avondale charged the defendants with " 'insufficient' containment measures; ... 'generating' hazardous waste; ... 'knowledge' of the presence of toxins; ... [and] culpability for 'escape' of hazardous materials." Avondale, 887 F.2d at 1205. In the instant case--as appellants admit in their present complaint--the underlying federal complaint alleged that
 
 
 15
 EAD, throughout its operation from March 1977 through 1983, caused the release into the environment of Americium-241, a radioactive substance, by disposing or arranging for the disposal of Americium-241 at its plant facility in the Town of Tonawanda, into portions of the Town's sewer lines and ultimately into portions of the Town's sewage treatment plant and landfill.
 
 
 16
 Moreover the underlying state complaint alleged that
 
 
 17
 EAD ... did wrongfully, willfully and illegally commit waste on, and damage to, [the] premises ... by causing, implementing, creating, generating, injecting and inflicting radioactive contamination....
 
 
 18
 Reading these allegations in the light most favorable to appellants, there is no question that, unlike the defendants in Avondale, appellants are alleged to have "continuously and intentionally polluted." Id.
 
 
 19
 Appellants' conduct is analogous to that ruled by the New York Court of Appeals to fall within the pollution exclusion. See Powers Chemco., Inc. v. Federal Ins. Co., 74 N.Y.2d 910, 549 N.Y.S.2d 650, 548 N.E.2d 1301 (1989). In Powers Chemco the underlying complaint alleged that the insured's predecessor buried, dumped and discharged pollutants into the environment. There is no significant difference between these allegations and the present ones that claim appellants disposed or arranged for the disposal of the pollutant americium-241 into the sewer lines, sewage treatment plant and landfill. As in Powers Chemco the present pollution damage, "resulting from purposeful conduct, cannot be considered 'accidental.' " Id. at 911, 549 N.Y.S.2d 650, 548 N.E.2d 1301.
 
 CONCLUSION
 
 20
 Having determined that Aetna and North River are relieved of the duties of defense and indemnification under the pollution exclusion of the general liability policies, and there being no genuine issue of material fact, we affirm the district court's grant of summary judgment in favor of appellees. It is unnecessary to address the applicability of the nuclear exclusion or the insured's own property exclusion.
 
 
 21
 Affirmed.