The STATE OF NEW YORK, Plaintiff,

v.

AMRO REALTY CORP., Harry Moskowitz, and David Moskowitz, Defendants and Third–Party Plaintiffs,

v.

ZURICH INSURANCE COMPANY; Atlantic Mutual Insurance Company; Unigard Security Insurance Company; Lumbermens Mutual Casualty Company; Graphic Arts Mutual Insurance Company; Federal Insurance Company; First State Insurance Company and Home Insurance Company, Third–Party Defendants.

No. 86–CV–1318.

United States District Court, N.D. New York.

Sept. 5, 1990.

 

Robert Abrams, Atty. Gen. of State of N.Y., Albany, N.Y., for plaintiff; David A. Munro, Asst. Atty. Gen. of counsel.

Rosenman & Colin, New York City, for defendants and third-party plaintiffs; Marc E. Kasowitz, of counsel.

Barry McTiernan & Moore, New York City, for third-party defendant Atlantic Mut.; Michael P. Close, of counsel.

Drinker Biddle & Reath, Washington, D.C.; Patricia A. Gotschalk, of counsel and Thuillez Ford Conolly & Kelly, Albany, N.Y., Donald P. Ford, Jr., of counsel, for third-party defendant Lumbermens Mut.

Siff Rosen & Parker, New York City; Mark S. Landman, Stephen Jacobs, and Steven G. Adams, of counsel and Twining Nemia Hill & Steflik, Binghamton, N.Y., for third-party defendant First State Ins.

Damon & Morey, Buffalo, N.Y., for third-party defendant Unigard Sec.; Andrew Feldman and James M. Kieffer, of counsel.

Mound Cotton & Wollan, New York City, for third-party defendant Home Ins.; Larry Greengrass and Sherri Margot Samilow, of counsel.

James S. Rowen Associates, New York City, for third-party defendant Graphic Arts Mut.; James S. Rowen, of counsel.

Rogers & Wells, New York City; John T. Wilkins, of counsel and Williams Micale & Wells, Syracuse, N.Y.; Peter N. Wells, of counsel, for third-party defendant Federal Ins.

Phelan Pope & John, Chicago, Ill.

A. Mark Pellegrino, Albany, N.Y.

William M. Gruner, trustee for American Thermostat, New Paltz, N.Y.

Frederk J. Scullin, Jr., U.S. Atty., Syracuse, N.Y.

## MEMORANDUM–DECISION & ORDER

McCURN, Chief Judge.

### I. Introduction

This action arises out of the discovery in 1981 of pollution at a site, in South Cairo, New York, which is owned by the defendant/third-party plaintiff Amro Realty Cor-

poration ("AMRO") and leased to American Thermostat Corporation ("AT"). In 1981, the State of New York, along with a number of private citizens, brought suit against AMRO and AT pursuant to New York common and statutory law. The suit was apparently discontinued after the parties entered into a consent decree whereby the defendants agreed to take certain remedial actions and provide nearby residents with bottled water. However, AT was forced into bankruptcy in 1985 and subsequently discontinued its compliance with the consent decree.

In March of 1986 the State of New York notified the current defendants, namely AMRO, Harry Moskowitz, and David Moskowitz, of the State's intention to again bring suit. On December 2, 1986, the State of New York filed a complaint against the defendants pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") and New York State common law. The plaintiff seeks to hold the defendants jointly and severally liable for all damages and response costs incurred by the State. The defendants then filed numerous third-party complaints against their primary and excess insurance carriers. The third-party actions sought both defense and indemnification from the insurance carriers as well as a declaration that the defendants/third-party plaintiffs are entitled to counsel of their choice.[1]

On October 11, 1988, this court issued a decision which granted the summary judgment motion of third-party defendants Unigard Security Insurance Company ("Unigard") and Lumbermens Mutual Casualty Company ("Lumbermens") and dismissed the third-party complaint as against them. *State of N.Y. v. Amro Realty Corp.*, 697 F.Supp. 99, 110 (N.D.N.Y.1988).[2] In so doing, this court denied the insureds motion for an order requiring Unigard and Lumbermens to provide a defense to the underlying State action. Unigard and Lumbermens were entitled to summary judgment, the court determined, due to the insureds failure to provide timely notice to Unigard and Lumbermens of an "occurrence"—the 1981 discovery of pollution by the State—as required by the applicable insurance policies. *Id.* at 105–06. The court further held that the "pollution exclusion" clause contained in the Unigard policy operated as an alternative ground upon which summary judgment could be granted in favor of Unigard. *Id.* at 106–10.[3]

The insureds have presently moved for reconsideration of this court's order of October 11, 1988. In the alternative, the insureds request an order, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, entering final judgment denying the insureds motion for partial summary judgment and granting the summary judgment motions of Lumbermens and Unigard and dismissing the third-party complaint. Also before the court is a motion by third-party defendant First State Insurance Co. ("First State") for a summary judgment order declaring that it has no obligation to indemnify or defend the insureds and dismissing the third-party complaint. Another third-

---

1. As noted in the previous decision, the Moskowitzes have been named as defendants in this action because (1) AT has been placed in involuntary bankruptcy and (2) the Moskowitzes are principles in both AMRO and AT. Defendants assert that Harry Moskowitz was president, a director, and a 15% shareholder of AT from 1965 to 1983; he was also the president, a director, and a ⅓ shareholder of AMRO. The defendants further assert that David Moskowitz started working at American Thermostat in 1977, became executive vice president in January of 1980, and became the president and a director in January of 1983; he was a 15% owner of AT. All of the defendants are alleged to be "owners" or "operators" within the meaning of section 107 of CERCLA, 42 U.S.C. § 9607. The defendants/third-party plaintiffs, AMRO,

Harry Moskowitz, and David Moskowitz, will frequently be referred to together as the "insureds."

2. The court will assume that the reader is fully familiar with its prior memorandum-decision and order of October 11, 1988.

3. Unigard, as the successor to Jamestown Mutual Insurance Company and Unigard Jamestown Mutual Insurance Company, provided AMRO and AT a combination auto/general liability policy from January 1, 1972 to January 1, 1974. Lumbermens issued a similar policy to AT and AMRO for the period from January 1, 1969 to January 1, 1970.

party defendant, Atlantic Mutual Insurance Co. ("Atlantic"), has moved for an order granting partial summary judgment declaring that it has no obligation to indemnify the insureds.[4] Atlantic also seeks to have any order certified for interlocutory review pursuant to 28 U.S.C. § 1292(b). The summary judgment motions of First State and Atlantic are largely based on this court's prior decision with respect to the application of the pollution exclusion clause to relieve Unigard of its duty to provide a defense or indemnification.

## II. Timeliness of Notice to Insurers and Waiver

The court previously determined that the insureds had failed to comply with the notice-of-occurrence provision contained in the Unigard and Lumbermens insurance policies. On this basis, the court held that Unigard and Lumbermens were entitled to summary judgment relieving them of the obligation of providing a defense or indemnification. The court further held that Lumbermens had not waived its right to raise the late notice defense when it did not raise that defense prior to the initiation of the CERCLA action. *See Amro Realty,* 697 F.Supp. at 102–06.

The insureds have moved for reconsideration of the court's determination that David and Harry Moskowitz failed to comply with the notice-of-occurrence provision. The Moskowitzes assert that they had no reason to believe that they would be subject to individual liability as a result of the State's discovery of pollution at the American Thermostat facility in 1981 because CERCLA does not, in any obvious manner, provide for officer and director liability. On this basis they claim that their failure to provide notice of the pollution occurrence until 1985 was not unreasonable.

The court rejects the Moskowitzes motion for reconsideration on this point for the reasons stated in the October 11, 1988, order and adds the following comments. The notice-of-occurrence provision generally contained in insurance policies serves

important purposes. As stated by the Second Circuit:

> They enable insurers to make a timely investigation of relevant events and exercise early control over a claim. Early control may lead to a settlement before litigation and enable insurers to take steps to eliminate the risk of similar occurrences in future. When insurers have timely notice of relevant occurrences, they can establish more accurate renewal premiums and maintain adequate reserves.

*Commercial Union Insurance Co., v. International Flavors & Fragrances, Inc.,* 822 F.2d 267, 271 (2nd Cir.1987). Thus, an insured's failure to comply with the notice-of-claim provision will often result in prejudice to the interests of the insurer. An insured's compliance with the requirements of a notice-of-occurrence provision serves as a condition precedent to any finding of liability on the part of the insurer. *Id.* "The test for determining whether the notice provision has been triggered is whether the circumstances known to the insured at that time would have suggested to a reasonable person the *possibility* of a claim." *Id.* at 272 (emphasis added).

As major owners and corporate officers of the AT facility the Moskowitzes may properly be charged with knowledge of the discovery of pollution by the State of New York in 1981. They may also be charged, under the reasonable person standard, with the knowledge that such a discovery would likely lead to legal action for damages against them individually. The definition of "owner" and "operator" contained in CERCLA at 42 U.S.C. § 9601(20)(A) is broadly worded and does not make reasonable the Moskowitzes belief that it was not possible for them to be held liable individually for AT's pollution. Moreover, the initiation of a state law claim against them individually was also clearly a "possibility." *See State of New York v. Shore Realty Corp.,* 759 F.2d 1032, 1052–53 (2nd Cir. 1985). Therefore, the four year delay in

---

4. *Atlantic's motion is not with respect to the duty to defend because it has entered into an* agreement with the insureds to pay for all future defense costs.

providing notice to Lumbermens and Unigard was unreasonable as a matter of law.

■ The insureds motion, for reconsideration of this court's determination that Lumbermens did not waive its right to raise the late notice defense, is also denied largely for the reasons stated in the prior order. *See Amro Realty,* 697 F.Supp. at 105–06. The insureds again claim that Lumbermens waived its right to raise a late notice defense because it did not raise that defense until after the initiation of the CERCLA action by the State of New York. Lumbermens had been given notice in March of 1986 that the State had served a "potentially responsible person" letter upon the insureds which indicated the State's intent to initiate an action pursuant to CERCLA. Lumbermens declined coverage at that time for a number of stated reasons which did *not* include the late notice defense. However, after the CERCLA action was filed by the State in December of 1986, and a copy of the complaint sent to Lumbermens, it again declined coverage by letter of January 23, 1987—for the first time raising the late notice defense.

On reconsideration, the parties focus on the definition of the word "suit" and whether the service by the State of New York of a potentially responsible person letter triggers an insurer's duty to defend. This appears to be an unsettled question of New York law; contrast the discussion in *Avondale Industries, Inc. v. Travelers Indem. Co.,* 887 F.2d 1200, 1206 (2nd Cir. 1989), with that contained in *Technicon Electronics v. American Home Assurance Co.,* 141 A.D.2d 124, 533 N.Y.S.2d 91, 104–05 (A.D. 2 Dept.1988). This court, however, need not decide that issue.

First, the insureds here are seeking to have Lumbermens provide a defense and indemnification for the claims asserted in the CERCLA action which is being prosecuted in this federal court. There is no request in the third-party complaint for the provision of a defense and indemnification for damages which might have been incurred in some state administrative proceeding. Thus, the issue of whether the State's pre-complaint letter was the initiation of a "suit" does not appear to be relevant to a determination of the precise claims raised by the insureds in their third-party complaints. Secondly, as has been stated repeatedly by the New York Court of Appeals:

> The duty to defend the insureds ... is derived from the *allegations of the complaint* and the terms of the policy. If the *complaint* contains any facts or allegations which bring the claim even potentially within the protection purchased, the insurer is obligated to defend.

*Technicon Electronics v. American Home,* 74 N.Y.2d 66, 73, 544 N.Y.S.2d 531, 533, 542 N.E.2d 1048 (Ct.App.1989) (emphasis added). If the duty to defend is based on the allegations of the complaint, it would not be possible for an insurer, in good faith, to determine whether it could reasonably raise a defense to coverage until after it had received and reviewed the complaint. This court refuses to hold that the Lumbermens waived a defense against the duty to defend *in this action* before it received the complaint and had an opportunity to determine whether its allegations fell within the scope of the insurance policy. Rather, Lumbermens' late notice defense was raised in a timely manner shortly after it received a copy of the underlying complaint.

### III. The Pollution Exclusion
#### A. Motion for Reconsideration With Respect to Unigard

■ In the prior order this court granted third-party defendant Unigard summary judgment on the alternate ground that the pollution exclusion clause, which was contained in its policy with the insureds, operated to relieve Unigard of its duty to supply a defense or indemnification. *Amro Realty,* 697 F.Supp. at 106–10. At the time the prior order was issued, the law concerning the proper interpretation and application of the pollution exclusion clause was unsettled. In the meantime, however, both the New York State Court of Appeals and the Second Circuit have issued decisions clarifying the circumstances under which the pollution exclusion operates to relieve

an insurer of its duty to defend or indemnify. *See Technicon Electronics v. American Home,* 74 N.Y.2d 66, 544 N.Y.S.2d 531, 542 N.E.2d 1048 (Ct.App.1989); *Powers Chemco, Inc. v. Federal Ins. Co.,* 74 N.Y.2d 910, 549 N.Y.S.2d 650, 548 N.E.2d 1301 (Ct.App.1989); *Avondale Industries, Inc. v. Travelers Indem. Co.,* 887 F.2d 1200 (2nd Cir.1989); *EAD Metallurgical, Inc. v. Aetna Cas. & Sur. Co.,* 905 F.2d 8 (2nd Cir.1990). Applying this new case law leads to the same result reached by this court in its earlier decision—that the pollution exclusion clause operates to relieve Unigard of its duty to defend and indemnify the insureds.

In *EAD Metallurgical, Inc. v. Aetna Casualty & Surety Co.,* 905 F.2d 8 (2nd Cir.1990), the Second Circuit provided its most recent application of the pollution exclusion clause. In *EAD* the underlying complaint alleged claims pursuant to CERCLA and New York State common law. The insureds, who included EAD, Inc., as well as certain of its officers, directors and stockholders, filed suit seeking a defense and indemnification from two general liability insurance companies. The sole issue before the Court was whether the insurance companies were bound to defend and indemnify the insureds in light of the pollution exclusion clause contained in the policy. *Id.* at 9–10.[5]

The court first summarized the current legal standard in New York for deciding whether an insurer has a duty to defend:[6]

> To determine whether coverage is required, we must examine the complaints in the underlying actions and decide whether there are " 'any allegations that arguably or potentially bring the action within the protection purchased' " or a

" 'reasonable possibility' " that coverage exists. *Avondale Indus., Inc. v. Travelers Indem. Co.,* 894 F.2d 498, 500 (2nd Cir.1990) (per curiam) (denial of rehearing) (quoting *Avondale,* 887 F.2d at 1204 and *A. Meyers & Sons v. Zurich Am. Ins. Group,* 74 N.Y.2d 298, 302, 546 N.Y. S.2d 818, 545 N.E.2d 1206 (1989)).

*EAD,* 905 F.2d at 11.

Next, the Second Circuit reviewed the precise words of the underlying complaints, which alleged:

> EAD, throughout its operation from March 1977 through 1983, caused the release into the environment of Americium–241, a radioactive substance, by disposing or arranging for the disposal of Americium–241 at its plant facility in the Town of Tonawanda, into portions of the Town's sewer lines and ultimately into portions of the Town's sewage treatment plant and landfill.

*Id.* at 11. The underlying complaints further alleged:

> EAD ... did wrongfully, willfully and illegally commit waste on and damage to, [the] premises ... by causing, implementing, creating, generating, injecting and inflicting radioactive contamination ...

*Id.* The court, reading those allegations in the light most favorable to the insureds, held that there was "no question" that the insureds were alleged to have " 'continuously and intentionally polluted.' " *Id.* (quoting *Avondale Indus., Inc. v. Travelers Indem. Co.,* 887 F.2d at 1205). The court then affirmed the district court's grant of summary judgment to the insurance companies on the basis that the pollu-

---

**5.** Essentially the same standard industry pollution exclusion clause as that which is at issue in the present suit was at issue in *EAD* and the other Court of Appeals and Second Circuit pollution exclusion cases. The Unigard policy contained a pollution exclusion clause, which read:

> It is agreed that the insurance does not apply to bodily injury or property damage arising out of the discharge, dispersal, release, or escape of smoke, vapors, soot, fumes, acids, alkalies, toxic chemicals, liquids or gases, waste materials or other irritants, contam-

inates or pollutants into or upon land, the atmosphere or any watercourse or body of water, but this exclusion does not apply if such discharge, dispersal, release or escape is *sudden and accidental.*

**6.** The court noted, that since the "duty to defend is broader than the duty to indemnify," there would be no need to analyze the insurance companies' claim that they had no duty to indemnify separately from their claim that they have no duty to defend. *EAD,* 905 F.2d at 11.

tion occurrence was neither sudden or accidental. *Id.*

The *EAD* court juxtaposed the language in the underlying complaint in the *EAD* action against the language contained in the underlying complaint in *Avondale*—where the Second Circuit held that the insurance companies had a duty to defend. The *EAD* court stated:

> The allegations in the underlying complaint in *Avondale* charged the defendants with " 'insufficient' containment measures; . . . 'generating' hazardous waste; . . . 'knowledge' of the presence of toxins; . . . [and] culpability for 'escape' of hazardous materials." *Avondale,* 887 F.2d at 1205.

*EAD,* 905 F.2d at 11. The language of the complaint in *Avondale,* according to the *EAD* court, held open the possibility that the pollution was "sudden and accidental" and therefore not subject to the pollution exclusion. *Id.*

The underlying complaint in the present suit alleges that the insureds were all owners or operators of the American Thermostat facility within the meaning of section 107(a)(1) and (2) of CERCLA, 42 U.S.C. § 9607. Complaint pars. 36–38. The underlying complaint further alleges in applicable part:

> 16. The American Thermostat Corporation used, *inter alia,* the chemical solvent tetrachloroethylene in its manufacturing operations to clean and remove grease from thermostat parts and components.

> 17. Upon information and belief, from the early 1950's and continuing until discovery by the plaintiff in 1981, [American Thermostat] disposed of, *inter alia,* waste tetrachloroethylene in several places on the site, including: the parking lot, sinks which discharged into septic systems on the site, and drains which discharged through a sewage pipe into a drainage ditch on the west edge of the site.

> 18. Tetrachloroethylene is a "hazardous substance" as defined in CERCLA, 42 U.S.C. § 9601(14).

> 26. Defendants knew or should have known that the waste solvents disposed of on the site were hazardous substances, that the methods of disposal of these wastes resulted in their release into the environment, and that adequate measures had not been taken to prevent future releases and migration of the chemicals to offsite areas, including homeowner wells.

> 27. Defendants have made no effort to protect the groundwater and other natural resources of the State from contamination by the waste solvents disposed of at the site.

Reading these allegations in the light most favorable to the insureds, and comparing the language of the underlying complaint to that which was addressed in *EAD* and *Avondale,* this court has no doubt that the type of pollution occurrence allegedly involved in the present suit is continuous and intentional industrial pollution.

On reconsideration, the insureds raise two narrow, yet related, points concerning the application of the pollution exclusion clause to relieve Unigard of its duty to supply a defense and indemnification. The insureds contend that Unigard still must supply a defense because the insureds were not "actual polluters" for some or all of the time period covered by the complaint. Specifically, the insureds maintain that they cannot be considered to be actual polluters simply by virtue of their relationship to American Thermostat. The insureds alternatively assert that they should not be considered to be actual polluters for the time prior to 1965 when they were not connected with American Thermostat and during which the underlying complaint alleges polluting activity took place. To support their position the insureds rely upon two New York State Appellate Division cases which essentially held that the pollution exclusion clause applied only to deny insurance coverage of "actual polluters" as opposed to innocent or passive polluters. *See Niagara County v. Utica Mut. Ins. Co.,* 80 A.D.2d 415, 439 N.Y.S.2d 538, 540 (4th Dept.1981); *Autotronic Systems, Inc.*

v. *Aetna Life & Cas.*, 89 A.D.2d 401, 456 N.Y.S.2d 504, 505 (3rd Dept.1982).

The next step in the insureds argument is to cite well settled New York case law which holds that the insurer has a duty to defend if the complaint alleges "any facts or grounds which bring the action within the protection purchased." *Seaboard Surety Co. v. Gillette Company*, 64 N.Y.2d 304, 486 N.Y.S.2d 873, 876, 476 N.E.2d 272 (Ct.App.1984); *see also Servidone Const. Corp. v. Security Ins. Co.*, 64 N.Y.2d 419, 488 N.Y.S.2d 139, 142, 477 N.E.2d 441 (Ct.App.1985). Finally, the insureds assert that, because it is clearly "possible" that they were not actual polluters for at least a portion of the polluting activity complained of in the underlying complaint, the pollution exclusion clause does not operate to relieve Unigard from its duty to defend.

█ The New York Court of Appeals addressed this line of reasoning in *Powers Chemco., Inc. v. Federal Ins. Co.*, 74 N.Y.2d 910, 549 N.Y.S.2d 650, 548 N.E.2d 1301 (1989), where an insurance company was relieved of the duty to indemnify due to the operation of the pollution exclusion clause. In *Powers Chemco*, however, the insured's *predecessor* (as opposed to the insured itself) was alleged to have buried, dumped, and discharged pollutants into the environment. The court stated:

> We also reject plaintiff's contention that since it was not the *actual polluter* but merely inherited the problem from the prior landowner, the pollution exclusion clause cannot bar its present insurance claim. Simply put, there is nothing in the language of the pollution exclusion clause to suggest that it is not applicable when liability is premised on the conduct of someone other than the insured.... As we noted in *Technicon*, the exclusion clause is "unambiguously plain and operative" ... and represents only a single

discrete exception to the insurer's obligation to indemnify under the policy. *Powers Chemco*, 74 N.Y.2d at 911, 549 N.Y.S.2d at 651, 548 N.E.2d at 1302 (emphasis added). It is now clear that New York law requires courts to focus on the *type* of pollution occurrence alleged as opposed to the culpability of the insured. Here, the underlying complaint alleges that the pollution was intentional and continuous industrial pollution. As found by the courts in *EAD*, *Technicon*, and *Powers Chemco*, this type of pollution damage cannot be considered to be an accident, and therefore, is excluded from coverage due to the operation of the plain language of the pollution exclusion clause.[7] This court reaffirms its holding that the pollution exclusion clause entitles Unigard to summary judgment.

### B. Summary Judgment Motions by First State and Atlantic

Both First State and Atlantic have moved for summary judgment on the basis, *inter alia*, that the pollution exclusion clause contained in their policies relieves them of the duty to provide any further coverage. First State has moved for a summary judgment order declaring that it has no obligation to provide a defense or an indemnification to the insureds and for dismissal of the complaint. Atlantic, having already agreed to provide a defense to the insureds, seeks only partial summary judgment on the issue of indemnification. It is not disputed by the insureds that a favorable decision with respect to Unigard's pollution exclusion clause defense would make appropriate the entrance of an order granting summary judgment to First State and Atlantic. October 24, 1988 Affid. of Norman Greene par. 5. The insureds, of course, have preserved their right to raise these issues anew on appeal. On the basis of the court's holding with respect to Unigard's pollution exclusion clause defense, this court hereby grants First State's mo-

---

7. As stated by the New York Court of Appeals in *Powers Chemco* "the exception to the exclusion for liability arising from pollution is not operative unless the occurrence in question was *both* 'sudden' and 'accidental.'" 74 N.Y.2d at 911, 549 N.Y.S.2d at 651, 548 N.E.2d at 1302 (quoting

*Technicon*, 74 N.Y.2d at 75, 544 N.Y.S.2d at 533, 542 N.E.2d at 1050–51) (emphasis in original). "Intentional discharges of waste, leading to the ultimate pollution of the environment" ... "cannot be considered 'accidental.'" *Id.*

tion for summary judgment, and Atlantic's motion for partial summary judgment.

### IV. Rule 54(b) Certification

■ The insureds have moved, in the alternative, for an order pursuant to Rule 54(b) of the Federal Rules of Civil Procedure for the entry of a final judgment as to the claims raised in the third-party complaint against Lumbermens and Unigard. Rule 54(b) states in applicable part:

> When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

When directing the entry of a partial judgment the district court must explain its reasons, keeping in mind the need to avoid piecemeal appeals by certifying claims only when they constitute separate and distinct questions of law and fact from other claims which have been asserted in the action. *Avondale Industries, Inc. v. Travelers Indem. Co.,* 887 F.2d at 1203–04.

■ Rule 54(b) certification of this court's decision to relieve Unigard, Lumbermens, First State, and Atlantic of any obligation to provide further coverage is clearly appropriate. The parties have agreed that the same pollution exclusion clause, which this court found operates to relieve Unigard, First State, and Atlantic of any duty to provide further coverage, is applicable to all of the other third-party defendant insurance companies. Thus, the court's holding presents a controlling question of law as to all of the third-party complaints.

The insurance coverage claims are also separable from the remaining claims presented in the action. Once the third-party defendant insurance companies have been relieved of the duty to provide a defense or indemnification, the only claims remaining in the suit are the CERCLA and New York State common law claims asserted against Amro and the Moskowitzes. The remaining claims asserted in the underlying action are "separable" because " 'they involve at least some different questions of fact and law and could be separately enforced.' " *Avondale Industries,* 887 F.2d at 1203 (quoting *Cullen v. Margiotta,* 811 F.2d 698, 711 (2nd Cir.), *cert. denied,* 483 U.S. 1021, 107 S.Ct. 3266, 97 L.Ed.2d 764 (1987)).

There also is no just reason for delay in the entry of a partial judgment. Should this court be in error as to any or all of the insurance coverage issues, the insureds would have to incur expenses of defending the action without having the benefit of the complete benefit of the litigation insurance encompassed within an insurer's duty to defend. Moreover, certification will serve judicial economy by permitting this court to incorporate the issues of indemnity into any trial on the merits rather than at a later date. A resolution of the insurance issues will also likely assist in the resolution or settlement of the main action because it will give the plaintiffs a better understanding of the assets potentially available to assist in the remediation of the alleged pollution at the American Thermostat site.

### V. Conclusion

The third-party plaintiffs' motion for reconsideration is denied. The clerk of the court is directed to enter this court's prior grant of summary judgment dismissing the complaint as against third-party defendants Unigard and Lumbermens as a final judgment pursuant to Rule 54(b) Fed.R.Civ.P. The motion by third-party defendant First State for summary judgment declaring that it has no obligation to defend or indemnify the third-party plaintiffs for all or any part of the claims made against them in the underlying complaint and for dismissal of the third-party complaint is granted; the clerk of the court is directed to enter final judgment on First State's motion pursuant to Rule 54(b). The motion by third-party defendant Atlantic for an order granting partial summary judgment declaring that it

has no obligation to indemnify the third-party plaintiffs for all or any part of the damages sought against them in the underlying complaint and dismissing Count I of the third-party complaint is granted; the clerk of the court is directed to enter final judgment on Atlantic's motion pursuant to Rule 54(b).

IT IS SO ORDERED.