**SAVOY MEDICAL SUPPLY CO., INC. and Savoy Realty Corp., Plaintiffs,**

v.

**F & H MANUFACTURING CORP., Henry D. Jackson and Catherine S. Jackson, Defendants/Third–Party Plaintiffs,**

v.

**Vincent P. SAVIA and Mary Savia, Third–Party Defendants,**

v.

**MICHIGAN MUTUAL INSURANCE COMPANY, Fireman's Fund Insurance Company, Zurich Insurance Company, American Motorists Insurance Company, American Protection Insurance Company, Third–Party Defendants.**

**No. CV 89–1469.**

United States District Court, E.D. New York.

Oct. 29, 1991.

Thomas J. Troiano, Huntington, N.Y., for plaintiffs Savoy Med. Supply Co., Inc. and Savoy Realty Corp. and third-party defendants Vincent P. Savia and Mary Savia.

Shlimbaum, Shlimbaum & Jablonski by Edward C. Jablonski, Islip, N.Y., for defendants/third-party plaintiffs F & H Mfg. Corp. and Henry D. and Catherine Jackson.

Twomey, Latham, Shea & Kelly by Stephen B. Latham, Riverhead, N.Y., for defendants Glaro, Inc. and Glass.

Curtiz, Zalkukiewich, Vasile, Devine & McElhenny by Brian McElhenny, Merrick, N.Y., for third-party defendant Michigan Mut. Ins. Co.

Rivkin, Radler, Bayh, Hart & Kremer, Uniondale, for third-party defendant Fireman's Fund Ins. Co.

Cuyler, Burke & Matthews, New York City, for third-party defendant Zurich Ins. Co.

Louis F. Vaccarella, Hauppauge, N.Y., for third-party defendant American Motorists Ins. Co.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

In the above-referenced action, third-party plaintiff F & H Manufacturing ("F & H") seeks recovery of defense costs against third-party defendants American Motorists Insurance Company ("AMICO"), American Protection Insurance Company ("AMPICO"), Michigan Mutual Insurance Company ("Michigan Mutual"), Fireman's Fund Insurance Company ("Fireman's

Fund"), and Zurich Insurance Company ("Zurich") (collectively, "the third-party defendants" or "insurers"). It is to be noted that the primary action brought against F & H, which sought damages pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, ("CERCLA"), 42 U.S.C. § 9601 *et seq.*, has been discontinued by the plaintiffs. During the pendency of these actions, F & H withdrew its claims against Zurich and Fireman's Fund. Currently before the Court is a motion by F & H for summary judgment against all the remaining third-party defendants; the third-party defendants cross-move for summary judgment. For the reasons stated below, summary judgment is granted to AMPICO; the summary judgment motions by Michigan Mutual and AMICO are denied. Finally, F & H's motion for summary judgment is likewise denied.

## BACKGROUND

As noted above, plaintiffs Savoy Medical Supply Co. and Savoy Realty Corp. ("Savoy") brought the underlying CERCLA action against F & H and its owners, Harry and Catherine Jackson. During the period from approximately 1966 to August of 1983, F & H manufactured ground support equipment for the United States Department of Defense. Their operations included milling, dulling, stamping, welding, painting, packaging and shipping.

On August 18, 1983, F & H sold the subject property to Vincent Savia and his wife, Mary Savia. At that time, F & H discontinued insurance coverage for the site in controversy.[1] Three years later, the Savias reconveyed the property to Savoy Medical Supply Co., Inc. and Savoy Realty Corp., corporations apparently controlled by the Savias. In July of 1987 analysis of ground samples taken from the site by Suffolk County authorities revealed the presence of various contaminants. In January of 1988, subsequent to negotiations with Suffolk County, Savoy arranged for the cleanup of the site and the testing of the groundwater. Plaintiffs thereafter filed the instant action against F & H and the Jacksons to recover damages for contamination of the property under CERCLA, and for reimbursement of the costs incurred in the investigation and cleanup of the site. Savoy additionally sought a declaratory judgment concerning future costs.

In the amended complaint, plaintiffs alleged in pertinent part:

8. Defendant [F & H] conducted heavy industrial operations at the site during said time period.

9. The Jackson defendants were aware of, and permitted defendant [F & H] to conduct heavy industrial operations at the premises during said time period.

10. Defendant [F & H] caused and allowed contamination of the environment to occur at the premises during said time period.

11. The Jackson defendants were aware of, and permitted defendant [F & H] to cause and allow contamination of the environment to occur at the premises during the said time period.

Amended Complaint at paras. 8–11.

F & H subsequently sought defense and indemnification from the third-party defendants, its insurers. Based on their disclaimers of liability, F & H commenced a third-party action against the insurers, seeking defense in the Savoy suit and indemnification of all sums paid as damages. All third-party defendants subsequently brought separate motions for summary judgment, and thereafter, F & H moved for partial summary judgment against third-party defendants. Since the filing of these motions and cross-motions, as noted above, plaintiffs have discontinued their underlying claims against F & H. However, although liability claims against F & H no longer exist, F & H continues to seek cov-

---

1. As far as the Court can discern, F & H clearly discontinued at least the policy with AMICO. It is irrelevant whether Fireman's Fund, Zurich, or AMPICO ended coverage in August of 1983 because they are released from liability for oth-er reasons. Michigan Mutual has not offered the same line of reasoning, and thus it is difficult for the Court to discern whether or not its policy with F & H ended at this time.

erage to the extent of its defense fees incurred. Thus, the Court must determine whether the remaining insurers owed a duty to defend F & H.

## DISCUSSION

A motion for summary judgment may be granted only when it is shown that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 57 (2d Cir.1987); *Winant v. Carefree Pools*, 709 F.Supp. 57, 59 (E.D.N.Y.), *aff'd*, 891 F.2d 278 (2d Cir.1989). The burden rests upon the moving party to clearly establish the absence of a genuine issue as to any material fact. *Donahue*, 834 F.2d at 57. Additionally, the Court must resolve all ambiguities and draw all reasonable inferences in favor of the non-moving party. *Id.* Furthermore, interpretation of insurance policies, similar to other contracts, may often raise pure questions of law properly decided by the Court. To that end, resolution by summary judgment serves a particularly appropriate use in the reduction of insurance contract coverage disputes. *McGinniss v. Employers Reins. Corp.*, 648 F.Supp. 1263, 1266 (S.D.N.Y.1986).

### AMPICO

Third-party defendant AMPICO argues that only AMICO issued the general liability policy, designated as No. ZMG 130 011, to F & H. AMPICO therefore contends that summary judgment is appropriate in its favor, thereby releasing it from its duty to defend. The Court agrees. Upon direct analysis of the policies it is evident that the parties intended that AMICO cover general liability and that AMPICO cover "Highly Protected Risks," pursuant to property coverage. *See* AMICO and AMPICO's Memo. in Support at exhibit I. Furthermore, F & H's papers fail to reference any material issue of fact that would lead the Court to find otherwise. Notably,

F & H appears to dispute every argument offered by the third-party defendants except the argument that AMPICO did not offer general comprehensive liability. Therefore, the Court grants summary judgment to AMPICO based on the clear language of the insurance contract, which remains uncontroverted by F & H.

### AMICO and Michigan Mutual

The Court now turns to consider whether, under the policies provided by them, AMICO and Michigan Mutual owed a duty to defend F & H. These policies provided for comprehensive general liability, and included the following standard exclusion:

> bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is *sudden* and *accidental*. . . .

*See* Michigan Mutual's Notice of Motion; AMICO and AMPICO's Memo. in Support at exhibit I (emphasis added).

An insurer's duty to defend and to indemnify are separate and distinct, and the former duty is broader than the latter. *Avondale Indus., Inc. v. Travelers Indem. Co.*, 887 F.2d 1200, 1204 (2d Cir.1989) (citations omitted), *cert. denied*, —— U.S. ——, 110 S.Ct. 2588, 110 L.Ed.2d 269 (1990); *Servidone Constr. Corp. v. Security Ins. Co.*, 64 N.Y.2d 419, 488 N.Y.S.2d 139, 142, 477 N.E.2d 441, 444 (1985). The duty to defend hinges on whether the complaint in the underlying action contains allegations that bring the action potentially within the protection purchased. *Ogden Corp. v. Travelers Indem. Co.*, 924 F.2d 39, 41 (2d Cir. 1991) (citation omitted). In other words, so long as the claims alleged against the insured "rationally may be said to fall within the policy coverage, the insurer must come forward and defend." *Avondale*, 887 F.2d at 1204.

New York law dictates that " '[b]efore an insurance company is permitted to avoid policy coverage, it must ... establish[ ] that the exclusions or exemptions apply in the particular case, and that they are subject to no other reasonable interpretation.' " *Id.* (citation omitted). Thus, the insurers herein bear the burden of proving to the Court that, as a matter of law, there is no possible basis in law or fact upon which the insurer might be held to defend F & H. *See id.* The insurer must therefore demonstrate that the allegations in the underlying complaint are "solely and entirely" within specific and unambiguous exclusions from the policy's coverage. *International Paper Co. v. Continental Casualty Co.*, 35 N.Y.2d 322, 361 N.Y.S.2d 873, 877, 320 N.E.2d 619, 622 (1974).

Case law within the Second Circuit provides substance to these general principles. In *Ogden,* the complaint alleged that the "contamination occurred continuously during the years 1950 through 1983." *See* 924 F.2d at 41. The court therein held that the "suddenness" issue was dispositive since the complaint could not possibly be read to have alleged a sudden discharge over such a long period, thus the insurer had no duty to defend. *Id.* at 42. In *EAD Metallurgical, Inc. v. Aetna Casualty and Sur. Co.,* 905 F.2d 8 (2d Cir.1990), the underlying federal complaint alleged that:

> EAD, throughout its operation from March 1977 through 1983, caused the release into the environment ... by disposing or arranging for the disposal of [the substance] into portions of the Town's sewer lines and ultimately into portions of the Town's sewage treatment plant and landfill.

*Id.* at 11. Additionally, the underlying state complaint alleged that:

> EAD ... did wrongfully, willfully and illegally commit waste on, and damage to, [the] premises ... by causing, implementing, creating, generating, injecting and inflicting radioactive contamination....

*Id.*

After considering these allegations, the *EAD* court concluded that there was no question that the insureds were alleged to have continuously and intentionally polluted. *See id.* Therefore, the contamination was not sudden and accidental, and fell within the pollution exclusion from coverage. *Id.*

In a similar circumstance, the court in *Powers Chemco., Inc. v. Federal Ins. Co.,* 74 N.Y.2d 910, 549 N.Y.S.2d 650, 548 N.E.2d 1301 (1989), held that the allegations contained in the complaint warranted a finding that the conduct fell within the exclusion clause. In that case, the underlying complaint alleged that the insured's predecessor buried, dumped, and discharged pollutants into the environment. *Id.* 549 N.Y.S.2d at 651, 548 N.E.2d at 1302. The Court held that the pollution damage "result[ed] from purposeful conduct," and therefore could not be considered accidental. *Id.*

In contrast, the *Avondale* court found a duty to defend because the allegations used in the complaint did not fall within the exclusion. The allegations of the underlying *Avondale* complaint charged the defendants with " 'insufficient' containment measures; ... 'generating' hazardous waste; ... 'knowledge' of the presence of toxins; ... [and] culpability for 'escape' of hazardous materials." *See* 887 F.2d at 1205. The Court held that these phrases were not completely within the exclusion, as required by law; thus, the court held that a duty to defend existed. *Id.* at 1206.

The present complaint, as previously noted, used the phrases "conducted," "were aware of," "permitted," "caused," and "allowed" in its description of F & H's actions. Such allegations leave open the possibility that the contamination occurred suddenly and accidentally. Therefore, the insurers have failed to prove to the Court that the only possible interpretation of the allegations results in no liability due to pollution exclusion clause. In so holding, the Court notes that *Ogden* clearly differs from the instant case. The allegations in the *Ogden* complaint left no doubt that the contamination could not be sudden and accidental because it described the conduct as "continuous" over a thirty-three year period. *See*

924 F.2d at 41. Here, however, the complaint contains no allegations of continuous behavior, and the contamination may have occurred over a brief period of time. In other words, the insurers have failed to show that charging F & H with the language "caused and allowed ... contamination ... during the said time period" negates the *possibility* of a sudden and accidental discharge.

The insurers argue that the terms used in the present complaint closely resemble those used in cases such as *EAD Metallurgical,* 905 F.2d at 11, and *Powers Chemco.,* 549 N.Y.S.2d at 651, 548 N.E.2d at 1302, in which those courts found no duty to defend. However, in the present case, both the precise words utilized and the spirit of the complaint leave open the possibility of the spill having occurred suddenly and accidentally. The insurers aptly describe the case law in the area, and raise the point that an intentional discharge cannot be sudden or accidental. However, they fail to convince the Court that the precise words and phrases of the complaint herein indicated intentional behavior on the part of F & H. In fact, the language employed by the complaint at bar more closely resembles that of *Avondale,* in which the court found a duty to defend. *See* 887 F.2d at 1205–06. Accordingly, the Court finds that, as a matter of law, AMICO and Michigan Mutual maintained a duty to defend F & H.

Other Exclusions

The policies held by F & H include various other exclusions, which, when applicable, relieve insurers of coverage. Michigan Mutual argues that two of these provisions, the owned property and alienated property exclusions, apply to the case at bar, and thus act to release them of any obligation. It is to be noted that although the policies held with the other insurers also contain similar exclusions, Michigan Mutual remains the only third-party defendant to argue this line of reasoning. However, for the reasons stated below, this Court rejects Michigan Mutual's contentions.

## A. *Owned Property Exclusion*

■ The owned property exclusion states that the policy does not apply to "property damage to property owned or occupied by or rented to the insured." *See* Michigan Mutual's Notice of Motion. From this, Michigan Mutual urges that because the underlying complaint alleged damage to property once owned by F & H, it had no duty to defend. At first blush, it appears that the exclusion is unambiguous and warrants relief for the insurer. However, upon further analysis, it becomes apparent that precedent supports the conclusion that the owned property exclusion does not apply to the case at bar.

In *Bankers Trust Co. v. Hartford Accident and Indem. Co.,* 518 F.Supp. 371 (S.D.N.Y.), *vacated on other grounds,* 621 F.Supp. 685 (S.D.N.Y.1981), the court held that work done on the insured's property to prevent further contamination was, as a matter of law, within the coverage of liability policies which included the owned property exclusion. *Id.* at 373. The court reasoned that, because the work was done to prevent damage to property of third parties, the exclusion did not apply. Furthermore, the court considered that if the preventive work was not done the pollutants would continue, and the parties would ultimately have to spend more money on the cleanup. *Id.*

The Court accepts the reasoning of *Bankers' Trust.* The interests in a swift cleanup warrant creating incentive for the insured to stop the pollution as soon as possible. F & H persuasively argues that, if coverage is only triggered when waste seeps onto third-party property, the incentive remains with the insured to delay cleanup until it affects third-party property. *See generally,* Barry R. Ostrager & Thomas R. Newman, Handbook on Insurance Coverage Disputes § 8.03[b] at 250–52 (3d ed. 1990) (discussing *Bankers Trust* rule) [hereinafter Ostrager & Newman]. This decision is especially sound when considered in light of the rule that insurance policies are generally to be construed against the insurer. *See Westchester Resco Co. v. New England Reins. Corp.,* 818

F.2d 2, 3 (2d Cir.1987). Likewise, the insurer bears the burden to show that an exclusionary clause applies. *Ingersoll Milling Mach. Co. v. M/V Bodena,* 829 F.2d 293, 306 (2d Cir.1987), *cert. denied,* 484 U.S. 1042, 108 S.Ct. 774, 98 L.Ed.2d 860 (1988). In addition, case law is unsettled as to what constitutes potential damage to third parties, thus mitigating against application of the owned property exclusion herein. *Boyce Thompson Inst. v. Insurance Co. of N. Am.,* 751 F.Supp. 1137, 1142 & n. 7 (S.D.N.Y.1990) (recognizing the unsettled nature of this issue).

In *Unigard Mut. Ins. Co. v. McCarty's, Inc.,* 756 F.Supp. 1366, 1369 (D.Idaho 1988), the court concluded that the owned property exclusion did not bar coverage despite the lack of evidence that contaminants had spread to adjacent lands or into groundwater. As the court noted, "the [Environmental Protection Agency] is not bringing this suit to restore defendants' land for defendants' benefit. Instead the suit is brought on behalf of a third party—the public." *Id.* Similarly, Suffolk County did not force the cleanup of the contamination for the benefit of F & H. Instead, concerns for public health and welfare provided the initial impetus. Therefore, the Court finds that the threat to the public due to F & H's contamination of the sanitary system placed the damage outside the confines of the owned property exclusion. To rule otherwise and find that no third party damage could have occured would necessitate an unrealistically narrow view of the extent of potential damage, as well as the gravity of environmental pollution in general.

### B. *Alienated Property Exclusion*

■ The Michigan Mutual policy also excludes coverage for: "property damage to premises alienated by the named insured arising out of such premises or any part thereof...." Michigan Mutual argues that, because F & H sold the property to the Savias in 1983, the exclusion applies and coverage is thus barred. "Once again, this exclusion only prohibits coverage for property damage to alienated premises, not liability to third parties." *Unigard,* 756 F.Supp. at 1369. Suffolk County initiated

the proceeding against the underlying plaintiffs for the benefit of the public and the environment. Accordingly, the alienated property exclusion does not apply, and Michigan Mutual owed a duty to defend F & H.

### Accrual of the Cause of Action

■ AMICO points out that the site involved herein was deleted from its policy, and therefore argues that it was no longer responsible for defense or indemnification of F & H subsequent to the August 19, 1983 date of deletion.

There is no clear rule within this circuit to determine when an "occurrence" takes place, thereby triggering coverage. If the damage "occurs" after the dates of the policy, the insurer is not responsible for coverage. F & H urges that neither the underlying complaint, nor any discovery taken in this action, has revealed when the property became contaminated. Based on this vagueness, F & H contends, the occurrence cannot be said to have occurred when the damage was first discovered in 1987. By utilizing this line of reasoning, F & H implicitly rejects the so-called "manifestation rule," by which an occurrence takes place when the injuries first manifest themselves. *Mraz v. Canadian Universal Ins. Co.,* 804 F.2d 1325, 1328 (4th Cir.1986). In *Mraz,* the Fourth Circuit noted that "determining exactly when damage begins can be difficult, if not impossible." *Id.* The *Mraz* court therefore judged the date of occurrence by the time at which the leakage and damage are first discovered, implying that environmental response costs are "essentially a cost of doing business" which should not be borne by liability insurers. *See* Ostrager & Newman, § 8.03[c] at 259. The *Mraz* ruling, therefore, places the burden and costs upon the insured.

However, in *American Home Products Corp. v. Liberty Mut. Ins. Co.,* 565 F.Supp. 1485, 1497 (S.D.N.Y.1983), *aff'd as modified,* 748 F.2d 760 (2d Cir.1984), the court held that the unambiguous intention of "occurrence" language requires the insured to establish, on a case by case basis, the date

of each claimant's "injury-in-fact" in order to trigger occurrence liability. *Id.* The court also held that application of the "injury-in-fact" rule allows for the use of hindsight to determine if the injury occurred during the covered time period. *See id.* An injury-in-fact rule would arguably result in increased coverage by insurance companies, in that although the insured does not maintain a policy at the time of discovery, the insurer will nevertheless be liable for an occurrence which took place during the period of coverage.

In the case at bar, justice warrants the application of the injury-in-fact rule. F & H contracted with AMICO for coverage during the policy period; construing the policy against the insurer, damage occurring within the policy period should be covered. It may be argued that the manifestation rule of *Mraz* provides increased certainty, and thus decreased administrative costs. Undoubtedly, to some extent, that is true because the actual date of pollution will not necessarily have to be discovered. However, the benefits of certainty do not always override the interests of justice. The parties clearly intended the policy to cover instances when damage occurred. Under *Mraz*, an insured may be forced to pay costs which were truly bargained for in a given policy, and thus reflected in higher premiums paid to the insurer.

Moreover, the argument that placing costs directly on the insured will provide greater incentive for safety holds little weight in a case such as this. Premiums also reflect desired levels of safety protection; thus, increased premiums could just as easily provide the necessary impetus for increased safety. If the Court were to apply the mainfestation rule, the expectations of the insured would not necessarily be reflected in the actual coverage. On the other hand, the injury-in-fact rule provides a foundation to support the expectation of the parties.[2] Accordingly, the injury-in-

fact rule is properly applied to the case at bar. In the Court's view, such a holding comports with the reasoning of the Second Circuit in *American Home Products*. *See* 748 F.2d at 765.

■ Upon application of the injury-in-fact rule to the case at bar, it becomes clear that summary judgment must be denied for all remaining parties. A material issue of fact still remains as to the actual date of the contamination occurrence. If it falls within the coverage period, Michigan Mutual and AMICO are liable to F & H for its defense costs. If the damage actually occurred subsequent to August 19, 1983, the insurers would not appear to be liable for the costs incurred in the defense of the primary action.

### CONCLUSION

For the reasons stated above, the motions for summary judgment by AMICO and Michigan Mutual are denied, as are the cross motions for summary judgment by F & H against them. Finally, AMPICO's motion for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure, is granted.

SO ORDERED.

F.Supp. 1495 (S.D.N.Y.1986), *aff'd,* 839 F.2d 14 (2d Cir.1988); *Atlantic Cement Co. v. Fidelity & Casualty Co.,* 91 A.D.2d 412, 459 N.Y.S.2d 425, 429 (1st Dep't 1983), *aff'd,* 63 N.Y.2d 798, 481 N.Y.S.2d 329, 471 N.E.2d 142 (1984).

---

**2.** Courts have accepted that the meaning of the language used in insurance policies must be found in the reasonable expectation and purpose of the ordinary businessman in the insured's line of business. *Board of Educ., Yonkers City School District v. CNA Ins. Co.,* 647